| 45 | 601 |
|----|-----|
| 82 | 403 |
| 84 | 297 |
| 84 | 377 |
| 84 | 428 |

W. C. PHILLIPS v. DAVID AYRES ET AL.

1. SURVEY.—It was the duty of a surveyor in making a survey of the eleven-league grant, in 1833, to mark the lines, where this could be done, and to designate and call for the natural objects found in making the survey and such artificial ones as he should make, which would be sufficient to locate and identify the survey as actually made upon the ground.

2. PRESUMPTION OF SURVEY.—Until it be otherwise shown, it is presumed the surveyor did his duty in making a survey.

3. CONTRADICTORY CALLS.—If the calls in a survey are conflicting and contradictory, preference must be given to those which in their

Argument for the appellee.

application to the grant are more specific and definite, in place of such as are merely general and indefinite or descriptive.

4. CALLS IN SURVEYS, &c.—Descriptive and locative calls defined and discussed.

5. LOST LINES AND CORNERS.—The general principles by which courts are guided in ascertaining lost lines and corners of surveys, or in fixing and defining upon the ground such as never were made, as recognized by the Supreme Court of Kentucky, adopted, as follows: (1.) "In general, distance yields to course, or, in the absence of any circumstance bringing the mind to a contrary conclusion, the courses shall be first pursued, contracting or extending the distances, as the case may require, to make the survey close. (2.) The beginning corner in the plat, or certificate of survey, is of no higher dignity or importance than any other corner of the survey. (3.) The order in which the surveyor gives the lines and courses in his certificate of survey is of no importance to find the true position of the survey. Reversing the courses is as lawful and persuasive as following the order of the field-notes. (4.) That construction is to prevail which is most against the party claiming under the uncertain survey. It is his duty to show and establish his corners." (5.) General, descriptive, and directory calls, although the character of the object called for may be entitled to greater consideration, must yield to calls for objects held to be of lower grade, in determining their relative importance, when such objects are referred to for the purpose of the specific location and identity of the land.

6. OUTSTANDING TITLE AS DEFENSE.—He who sets up an outstanding claim as a defense, must show satisfactorily that it embraces the land in controversy.

7. BOUNDARY—SURVEY—NAVIGABLE RIVER AS A LINE.—A survey described as lying on the left bank of a navigable river will be so run that none of the lines shall cross the river; course and distance crossing the river will be disregarded to the extent interfered with by the river.

APPEAL from Bell. Tried below before the Hon. J. P. Osterhout.

The facts discussed are fully given in the opinion.

*Hancock, West* and *North,* for appellant.

*L. C. Alexander,* for appellee, cited Urquhart *v.* Burleson, 6 Tex., 511; Bolton *v.* Lann, 16 Tex., 110; 19 Tex., 460;

Booth *v.* Strippleman, 26 Tex., 436; Booth *v.* Upshur, 26 Tex., 64; Stafford *v.* King, 30 Tex., 269.

*F. H. Sleeper,* also for appellee.

MOORE, ASSOCIATE JUSTICE.—The determination of this case depends upon the ascertainment of the precise locality of the boundary line, as run and marked upon the ground by the surveyor, of eleven leagues of land granted in the year 1833 by the State of Coahuila and Texas, to Maximo Moreno, and now claimed by appellees; or if this cannot be done, to determine from the description by the surveyor, whose report is found in and made part of the grant, how the boundary lines should be run, and what is the true and precise location of the land when they are thus run and marked upon the ground. The principal difficulty in doing this, is in ascertaining and identifying the precise localities of the western and northern line, if these lines were in fact ever actually run by the surveyor, and if not, in saying precisely how and where they should be now run. This is the more important as the controversy in the case turns entirely on the location of these lines, if, indeed, it does not depend altogether on the correct location of the northern line.

For the better understanding of the matters presented for our consideration, we will here copy the report by the surveyor made by order of the commissioner by whom the grant to Moreno was executed, and embodied by him in it as a part thereof, for the purpose of identifying and describing the land thus granted. The report reads as follows:

"SENOR ALCALDE AND COMMISSIONER: The land surveyed by me in virtue of the foregoing decree from you for the attorney of the citizen Maximo Moreno, is situated on the left margin of the river San Andres, below the point where creek called 'Lampasas' enters said river on its opposite margin, and it has the lines, limits, boundaries, and landmarks following, to wit: Beginning the survey at a Pecan,

(Nogal,) fronting the mouth of the aforesaid creek, which Pecan serves as a landmark for the first corner, and from which 14 varas to the north 59' west there is a hackberry 24 inches diameter, and 15 varas to the south 34' west there is an elm 12 inches diameter. A line was run to the north 22° east 22,960 varas; planted a stake in the prairie for the second corner. Thence another line was run to the south 70° east; at 8,000 varas, crossed a branch of the creek called Cow creek; at 10,600 varas, crossed the principal branch of said creek; and at 12,580 varas, two small hackberries serve as landmarks for the third corner. Thence another line was run to the south 20° west; and at 3,520 varas, crossed the said Cow creek; and at 26,400 varas to a tree (Pala) on the aforesaid margin of the river San Andres, which tree is called in England Box Elder, from which, seven varas to the south 28° west, there is a cottonwood with two trunks, and 16 varas to the south 11° east there is an elm 15 inches diameter. Thence following the river up by its meanders to the beginning point, and comprising a plain area of eleven leagues of land, or 275,000,000 of square varas. The river timber is oak, elm, ash, and hackberry; and in the prairie mesquite grows, bounded by the river and vacant lands; and it is composed, according to my knowledge, of one league and a half of temporal land and nine and a half leagues of pasture; its configuration being as in plan accompanying.

" F. W. JOHNSON."

A copy of the accompanying plan, referred to by the surveyor, is not in the transcript, but the figure of the survey is apparent from the direction and length of the lines as stated. And from the calls of the survey, if actually made, all of its lines and curves should, it would seem, be readily found and identified. But from the evidence on behalf of both appellants and appellees, for the purpose of ascertaining the precise locality of the boundary lines and fixing the exact location of the grant, we think it quite probable that neither the

western nor northern limits of the survey were ever in fact run by the surveyor. If they were, certainly the evidence in this record does not lead the mind to such a conclusion, as will be seen hereafter.

But whether the entire grant was actually surveyed or not, the calls of the field-notes appear to be quite sufficient to identify the survey, or to enable the court to determine and lay down the rules and principle by which the boundaries of the grant, can be precisely and definitely ascertained.

It was unquestionably the duty of the surveyor to make an accurate and exact survey of the land, as he represents himself to have done, to mark the lines where this could be done and to designate and call for the natural objects found by him in making the survey, and such artificial ones as he should make, which would be sufficient to locate and identify the survey as actually made upon the ground. (Buckley *v.* Bryan, Ky. Decis., Oct. Term, 1801, 91.) And until the contrary is made to appear, it is to be presumed the surveyor performed this duty. If, however, this presumption is rebutted or the contrary made to appear, it does not follow that the grant is invalid. (Stafford *v.* King, 30 Tex., 257.) But in such a case the grant is to be designated and located by a survey to be made in conformity with the calls of the survey, as reported by the surveyor. If these calls are conflicting and contradictory, then preference must be given to those which, in their application to the grant in question, are more specific and definite, in place of such as are merely general and indefinite or descriptive. (Wright *v.* Mabry, 9 Yerg., 55.)

Calls in grants, deeds, and surveys, which serve to designate and identify land, are divided into general, descriptive, and directory, or special and locative calls. The former, although the character of the object called for may be entitled to greater consideration, yet in view of the nature and purpose of such calls, must yield to those for objects held to be of a low grade in determining their relative importance

when such objects are referred to for the purpose of the specific location and identity of the land. It has been frequently said by this court, as well as others, that in determining the relative importance of locative calls for different objects preference should be ordinarily given, 1st, To calls for natural objects, such as rivers, lakes, creeks, springs, &c.; 2d, Artificial objects, such as monuments, adjacent surveys, marked lines and corners, &c.; 3d, Course and distance, but of these the first should control in preference to the last. (Stafford *v.* King, 30 Tex., 257; Fulwood *v.* Graham, 1 Richd., 491.) The actual identification of the survey is the object and purpose sought to be attained by the application of these general rules, and when they lead to contradictory results, or uncertainty and confusion, the rule should be adopted which is most consistent with the intention apparent upon the face of the grant as ascertained from all the surrounding circumstances. (Cleaveland *v.* Smith, 2 St. C. C. R., 278.) And as is aptly said by the Supreme Court of Maine in Hench *v.* Hopkins, (23 Me., 217,) "Every call in the description of the premises in a deed must be answered if it can be done; and the intention of the parties is to be sought by looking at the whole, and none is to be rejected if all the parts can stand consistently together. If there be a precise and perfect description showing that the parties actually located the land upon the earth, and another general in its terms, and they cannot be reconciled with each other, the latter should yield to the former. But where there is inaccuracy or deficiency in the particular description, the one which is general often becomes important, and renders that clear which without it would be obscure."

The general principles by which the courts are guided in ascertaining lost lines and corners of surveys, or in fixing or defining upon the ground such as never were in fact actually made by the survey, are said by the Supreme Court of Kentucky to be well settled, and that the previous decisions of that court sanction and establish the following general formula:

"First. In general, distance yields to course, or, in the absence of any circumstance bringing the mind to a contrary conclusion, the courses shall be first pursued, contracting or extending the distances, as the case may require, to make the survey close. (Littell's Sel. Cases, 91.)

"Second. The beginning corner in the plat or certificate of survey is of no higher dignity or importance than any other corner of the survey. (Buckley *v.* Bryan, Ky. Decis., (Sneed,) 1801–1805, 91.)

"Third. The order in which the surveyor gives the lines and corners in his certificate of survey is of no importance to find the true position of the survey. Reversing the courses is as lawful and persuasive as following the order of the certificate. (4 Monr., 32.)

"Fourth. That construction is to prevail which is most against the party claiming under the uncertain survey. It is his duty to show and establish his corners. (Preston's Heirs *v.* Bowmar, 2 Bibb, 493.) From which it will follow, that he who sets up and relies on an outstanding claim must show that it embraces the land in contest, and should not succeed by using it when it is uncertain whether it embraces it or not." (Pearson *v.* Baker, 4 Dana, 321.)

The application of these general principles to the facts as shown in the record will suffice to obviate all difficulty, as we think, in the proper location of the Moreno grant; at least in doing this so far as it is necessary for the determination of this case, and will show beyond all reasonable doubt that the surveys of neither of the original defendants, Phillips or Worrall, are in conflict with it.

On examining the surveyor's report, it will be seen that the calls in his notes of survey are of the different classes of calls, and for the different character of objects to which reference is made in the cases we have cited; for example, as descriptive calls, indicating the locality or neighborhood in which to look for the land, and distance to which search should be extended, and the quantity of land or size and shape

of the survey for which we are to look, we are told that it is on the left margin of the San Andres river; and, by way of indicating still more definitely whereabouts on the river search should be made for it, we are informed that it is below the point where the creek called "Lampasas" enters said river on its opposite margin. The distance below, however, is to be ascertained by an examination in the locality indicated for the special and locative calls given, to enable us to ascertain and fix the precise locality of the grant, and the exact position of its boundary lines and corners. Of the latter character of calls, we have calls for natural objects, such as the meanders of the San Andres river as one line of the survey, and the points of crossing of other-named streams in running some of the other lines; natural objects, such as plainly designated corners at well known and described trees, identified, it is supposed, by proper marks, and their position specifically located and defined by their relative position to other trees named and described; marked lines, as is also to be inferred from the known duty of surveyors in running lines connecting different corners of surveys, and also the course and distance of the lines.

Certainly, if on a search in the neighborhood pointed to by the general calls, a survey with the corresponding locative calls is found, there would be no doubt or hesitancy in saying that it was the survey called for in this grant. On examining the evidence in the record by which it is sought to locate and fix upon the ground the survey called for, made for Moreno, and to show appellee's superior right to the *locus in quo,* for which the defendants Phillips and Worrall hold patents from the State, it will be seen that the Pecan, which is the beginning corner of the survey, and to which we are guided by the general call that it is "fronting the mouth of the Lampasas creek," and is still more precisely identified by bearing trees, named and described, and also exactly located by calls for course and distance at which they stand from it, cannot be found. The record does not show what search was

made for this beginning corner on the river opposite to the mouth of the Lampasas, where the field-notes of the survey- or called for it as fronting the north and below the point where the Lampasas enters the river, which evidently might be at a considerable distance from a point opposite the mouth. The character of the soil, or geological formation in the vicin- ity of the confluence of these streams, is not shown. If the soil is alluvial, there evidently might have been quite a change in their point of junction. Nor are we informed whether there are other streams or sloughs entering the San Andres in the same vicinity, which might have been mistak- en by the surveyor for the mouth of the Lampasas. In view of contingencies of this character, and of the further fact, that it is shown if the first line of the survey is run at the course and distance called for from the point opposite the mouth of the Lampasas, assumed as the beginning corner by the surveyor Rucker, so as to connect with the lower well-established marked line and corner on the river, the survey will be some six hundred and twenty-seven varas too wide, and that no marks can be found on the first or second line, we think pru- dence would have dictated further searth for this beginning corner lower down the river.

In the absence of other evidence guiding us to the exact locality of the beginning corner, we concede that it must be fixed as best it may from the general calls for a point front- ing the mouth of the Lampasas. And conceding that this point is where it was assumed to be by Rucker, it appears, if a line is run from it in the course called for in the grant, it will cross and recross the Leon river, which, as is well known, is the name by which the San Andres, or, as now called, Little river, is designated above its junction with the Lampasas. But to so run, it would conflict with the call for a survey on the left margin of the river, and would violate the law for- bidding the crossing streams of this character. It must there- fore be concluded, we think, that the surveyor did not run the line on the course called for from this point. Should it

be said that the course should, on this account, be partially abandoned, and the river, either from the point of crossing to the recrossing, or from the assumed beginning corner to the place where the line should finally leave the river, be adopted as the boundary and part of the first line? But if we do this we not only abandon the call for the course, but also involve the proper length of the line from the first to the second corner in doubt and uncertainty. For if the meanders of the river are to be regarded in computing its length, the distance by a direct line from this point to a second corner must be considerably diminished, and the north line of the survey in this event would hardly conflict with the land claimed by appellant. To so run, also, this line requires a departure from its course, and requires that its call, as a direct line, shall be either shortened or lengthened. And it would likewise require a change, to some extent, in the general shape of the survey, and bring about a conflict with the call locating the grant on the river below the mouth of the Lampasas. To construct the survey by running a line from this point, as the beginning corner, the distance called for in the grant to its second corner, and then, by the call for course, back to it, would require the calls for artificial objects and marked boundaries to yield to this first call for distance merely; or if we vary the call for course and distance from this imaginary or hypothetical course, so as to connect with the marked line, we have to vary either the course or distance, and perhaps both of the other lines, in deference to this first line, which we have said cannot be run in strict conformity with its call, and by doing so we will also include in the survey from one to two leagues more land than the grant should contain, which evidently does not accord with the principles by which the courts are guided in locating lost lines, or such as were never in fact run.

There is no question that the lower river corner still exists, and is clearly identified by the calls in the grant; and a properly marked line, of corresponding age with the survey, can

be traced for about the distance for which it calls from it in the direction of the third corner. But in attempting to connect his supposed second corner with this lower line, by running the course and distance called for in the grant, appellees' witness Rucker says, that he had to protract it five hundred and eighty-seven varas, and the lower line had also to be prolonged beyond its call, and beyond the point to which it was marked, some thirty-eight hundred varas.

It should be likewise noted that neither this witness nor Bingham, the witness for appellant, was able to find on either of the lines run by them for the north boundary of the survey, or elsewhere, any marks indicating that this line was actually run and marked on the ground by the surveyor; and it is beyond question, unless the channel of the San Andres has shifted since the survey was made, the upper line was not run, as called for, from the point taken as the beginning corner by Rucker. As it was then and still is contrary to law for the surveyor to so run it, the court should not presume that it was in fact thus run, or take it as the proper basis upon which to construct the survey. There being no natural or artificial object called for by which the second corner can be found, and having to discard the calls for course and distance of the line leading to it from the beginning corner, its position can only be determined by reversing the calls, and endeavoring to find or locate it by a line from a different direction.

If the grant were identified in no other way than by the beginning corner, a survey might be constructed from it by the calls for course and distance. But we are reduced to no such necessity. Assuming that the point from which Rucker started is the true beginning corner, we have the river line from it to the fourth corner, about which there is no controversy; and from this lower river corner we have a plainly-marked line on the proper course towards the third or northeast corner, which Bingham says he found plainly marked and identified; and that the line connecting these corners is plainly marked

and easily traced. He also states that he surveyed the land for appellees, and their son and, as we think may be inferred, agent, was with him, and admitted that this was the northeast corner of the grant, and that he has heard one of the plaintiffs also claim it as such. He also says that years ago he saw at this point the double hackberry called for in the field-notes. It is objected that the field-notes describe this corner as at two small hackberries and not a double hackberry. But when we consider the witness is describing the trees some thirty or forty years after the survey, the supposed discrepancy is not such, in our opinion, as should in any degree impair the credit of his evidence.

But suppose it is admitted that this witness is mistaken, there is no proof establishing and fixing the corner at any other point. Certainly it cannot be supposed that the mere declarations of Rucker, that McMillian, who from his statements seems to have previously surveyed the land by order of court in some other case, reported that he had found this corner at the point where Rucker assumes he located it, and where he says he "was informed that there had been a double hackberry, as called for by field-notes," but where he says he could find no corner, can be regarded as evidence tending to prove that the corner is at such point. It therefore must follow, as the corner has not been found, that it must be fixed by the court at the point where the calls for course and distance in the grant place it; and this, according to the evidence of Rucker, is the point where the old blazed line gave out, and five hundred and sixty varas south of the corner said to have been found by McMillian, as stated by Rucker, and about where Bingham says he found the northeast corner of the grant.

There being no natural or artificial object called for in the grant or found upon the ground to guide in running the two remaining lines, or to fix the position of the other corner, recourse must be had to the calls for course and distance. But it is apparent, from what has been said and the obvious

positions of the first and third corners, that in connecting them the calls for course and distance cannot be both observed. Evidently, if a line could be run from the first corner on the course called for by the surveyor, a line of like character from the third corner would have to be protracted between six and seven hundred varas to intersect the first line; and if the corner is placed at the point of intersection, the first will not be so long as called for by some thirty-eight hundred to four thousand varas. But as distance yields to course ordinarily, no doubt this would be the proper way of completing the survey. But as neither the call for course or distance from the first corner can be followed, we think it might with more propriety be held that the line from the third or second corner should be run in accordance with the calls for distance as well as course given in the grant. And the second corner, as thus defined, should be connected with the first by a direct line, if this could be done without crossing the river, and if not, by such lines to the river, and thence by the meanders of the river to the beginning corner. Evidently if either of these modes of completing the survey is adopted, although it will contain more land than called for in the grant, there will be no conflict with the land claimed by appellant. It is therefore not essential for us to definitely decide at this time by which of these modes the survey should be completed. If, however, neither of these two modes of concluding the survey is adopted, we must hold that the general and descriptive calls do not enable us to fix the precise beginning corner, and therefore the course of the line from the second to the first corner should be held to be the controlling call, and the first corner should be fixed where the line thus run strikes the river. But this manner of making the survey would be still less advantageous to appellees than either of the others, and we pass it by, saying merely, as already intimated, that the calls for the beginning corner as below and fronting the mouth of the Lampasas is, as we think, sufficiently definite to enable one searching for

it to fix and define its proper position, whether the surveyor, Rucker, has done so or not; and that these calls are superior to and will control the calls for course and distance, if there should be a conflict between them in locating the corner.

It may be also insisted that the survey could be closed by fixing the second corner at the distance and course from the beginning corner called for in the grant, and then connecting this second with the third corner by a direct line. Passing by the obvious objection to locating the second corner in this way, to which we have heretofore adverted, we will only remark, that this will require more importance to be attached to the first than the second line, which cannot be properly done, as we have already said. It would also obviously involve a greater departure from the course given for the second line than would occur by joining the first and second corners by a direct line, if we locate the latter, as heretofore stated, by a line running from the third corner by the course and distance called for in the grant. It would also make a greater change in the figure of the survey, and would add considerably to the excess in the quantity of land over and above that intended to be conveyed by the grant.

If it is admitted that the corner found by Bingham is identical with that reported to have been found by McMillian, and that this point is five hundred and sixty varas further north than called for by the eastern line of the grant, as stated by Rucker, and that he has correctly defined and run the north line of the survey from this corner, and that this line, as he states, cuts off a part of the land patented to appellant; still the general verdict against him and his co-defendant Worrall should have been set aside by the court. The verdict of the jury and judgment of the court, can only be supported on the supposition, that the proper course for locating and designating the survey, is by a line of the course and distance called for in the grant from the first to the second corner, and by connecting this second corner by a line run on the proper course with an extended line from the lower river

corner.    This proposition, as has already been said, is altogether untenable, and subversive of all the rules and principles governing the court in the construction of calls for boundaries in deeds and grants.

The judgment is reversed and the cause remanded.

Reversed and remanded.