F. H. AYERS v. CALEDONIA P. LANCASTER.

(Case No. 4698.)

1. PRACTICE IN DISTRICT COURT.— An admission of the plaintiff's cause of action as set forth in the petition, except as it is attempted to be defeated by facts pleaded in defense, which constitute, if true, a good defense, must, in order to entitle the defendant to open and conclude the evidence and argument, be entered of record.

2. SURVEY — CHARGE OF COURT.— In a case involving the true location of the disputed lines of a survey, the effort should be to ascertain as near as practicable from the evidence what was done on the ground by the surveyor who made the survey, and in doing this it is not important to determine which line was first run or which corner first established.

3. CHARGE OF COURT — SURVEY.— In such a case a charge which declared to the jury that it was a matter of no consequence who made the survey, in a case where the surveyor was himself a witness, was error, inasmuch as it might tend to affect the credit to be given to his evidence. R. S., art. 1317.  ⟵

4. SAME.— In a case involving the boundary of a survey, the court having charged the jury to follow the footsteps of the surveyor where they could be found with reasonable certainty, and only to regard course and distance called for in the survey, so far as the same would not be in conflict with actual traces and measurements made upon the ground, it was not error to further instruct them that "it is as lawful and persuasive to reverse courses as to follow them in the order given in the title." Following Phillips v. Ayres, 45 Tex., 607; Pearson v. Baker, 4 Dana, 321, and 4 Monroe, 32.

5. SAME.— When all the lines of a survey were actually run and measured on the ground, then in ascertaining its boundaries the calls may be reversed, otherwise they should not be.

6. SAME.— The evidence showed that the western and northern lines of a survey were actually run and measured on the ground in making the original survey, and the southeast corner was identified. Held, that it would not be proper to ascertain the true location of the northeast corner by reversing the calls and measuring distance on the east line from the southeast corner, if the east line was not actually run and measured.

7. Same.— Whether any or all the lines of a survey were actually run upon the ground in making the original survey is a question of fact which should be submitted to the jury.

8. Survey — Dignity of calls.— When the true locality of the north or back line of a survey fronting on a river was the matter to be ascertained, it was not shown that the east line had been originally run by the surveyor. The southwest and southeast corners on the river were clearly established. In the field-notes of the survey there were several calls for natural objects besides those at the river corners. *Held*, that it was error to instruct the jury that the true northeast corner (at which the trees called for to identify it could not be found) should be established by mensuring (reversing the course) on the east line the distance called for in the field-notes, from where that line crossed a stream, to the northeast corner. Especially was this error when it involved a disregard of a marked east line extending beyond the corner, as it would have been thus established by charge of the court and of other measurements and marked lines.

Appeal from Bell. Tried below before the Hon. B. W. Rimes.

The following sketch gives an approximately accurate idea of the Maximo Moreno survey, the true location of which was the subject of controversy:

Statement of the case.

A    N. W. corner as claimed by defendant.
B    N. E. corner as claimed by defendant.
C    Hackberry corner as claimed by plaintiff.
D    Point where distance ends from S. E. corner.
L and M   Undisputed corners.

On the 29th day of August, 1877, appellee filed her petition in the district court of Bell county, in an action of trespass to try title against appellant and others to the tract of land set forth in plaintiff's petition. The defendants answered by a general denial and plea of not guilty. Verdict and judgment against all the defendants.

In the spring of the year 1833, Francis W. Johnson, colonial surveyor for Austin & Williams, located and surveyed eleven leagues of land in what is now Bell county, for Maximo Moreno. That he returned the field-notes to the proper officer, and upon the survey as he made it the title was issued. The field-notes in the grant read as follows, according to the report of the surveyor, which is as in the title: "Senor Alcalde and Commissioners: The land surveyed by me in virtue of the foregoing decree from you for the attorney of the citizen, Maximo Moreno, is situated on the left margin of the river San Andres, below the point where the creek called Lampasas enters said river on its opposite margin, and it has the lines, limits, boundaries and landmarks following, to wit: Beginning the survey at a pecan (*nogal*) fronting the mouth of the aforesaid creek, which pecan serves as a landmark for the first corner, and from which one hundred and forty varas to the north, fifty-nine west, there is a hackberry twenty-four inches in diameter, and one hundred and fifty varas to the south, thirty-four west, there is an elm twelve inches in diameter. A line was run to the north, twenty-two east, twenty-two thousand nine hundred and sixty varas; planted a stake in the prairie for the second corner. Thence another line was run to the south, seventy east; at eight thousand varas crossed a branch of the creek called Cow creek; at ten thousand six hundred varas crossed the principal branch of said creek, and at twelve thousand five hundred and eighty varas two small hackberries serve as landmarks for the third corner. Thence another line was run to the south, twenty west, and at three thousand five hundred and twenty varas crossed the said Cow creek, and at twenty-six thousand four hundred varas to a tree (*palo*) on the aforesaid margin of the river San Andres, which tree is called in English box alder, etc. . . . Thence following up the river by its meanders to the beginning point, and comprising a plain area of eleven leagues of land, or two hundred and seventy-five million square varas, etc. [Signed.] F. W. Johnson."

The principal witnesses who testified for defendants in regard to the true locality on the ground of the lines and corners of the Maximo Moreno grant, as originally established by the colonial surveyor, were: Francis W. Johnson, who was the colonial surveyor, his chain carrier, Wm. Duty, and W. T. Rucker and J. W. Turner.

Johnson testified, in substance, that he was the party who made the survey as it was titled by order of the empresarios Austin & Williams; that he ran the lines and established the corners precisely as claimed by defendants. Wm. Duty testified that he carried the chain for Johnson when he made the survey; he also testified that in April, 1881, he went again over the ground with the county surveyor of Bell county; that he visited the place known as the Bigham corner (which is the northeast corner, as claimed by plaintiff); he was positively certain that Johnson and his party did not make the northeast corner there; that he remembers particularly about that corner, because there he was troubled by Indians. J. W. Turner, county surveyor of Bell county, testified, in substance, that he commenced at the northwest corner as established by course and distance from the beginning corner (which is the northwest corner, as claimed by defendants); that he then ran the north line; that when it ran through timber, he found old blazes on the trees, which was the surveyor's mark under the Spanish government; that he then ran the east line from the southeast corner; found old blazed trees on the east line, apparently as old as any on that line, north of the hackberry corner; *the last blaze he found was within a few feet of where the north line, as run by him, extended* (which is the north line as claimed by defendants), *would cross the east line, and at the intersection of the two lines, per a northeast course, he found the remnants of a decayed hackberry tree, etc.* W. T. Rucker testified, in substance, that to begin the survey at the beginning or southwest corner (which was admitted by all parties to be found and identified on the ground), and to make the survey as called for in the grant (which is as claimed by the defendants), all the land claimed by plaintiffs would be included in the grant; but to commence the survey at the last or southeast corner, and reverse the calls, the land claimed by plaintiffs would not be included in the grant. R. P. Bigham, a witness for plaintiffs, testified nothing in contradiction of the foregoing; he stated, among other things: "In the spring of 1880 I did find several trees marked beyond said trees (northeast corner as claimed by plaintiffs); all late surveys are marked with *hacks*. Eleven-league surveys are marked with *blazes*."

The above is but a small portion of the great mass of evidence in this case; other facts will be found in the opinion.

*X. B. Saunders*, for appellant, cited:* R. S., art. 1318; 20 Tex., 215; 26 Tex., 328, 329; 25 Tex., 621; Stroud *v.* Springfield, 28

---

* It is regretted that the concise and clear printed argument of appellant cannot appear.

Tex., 649; Welder *v.* Carroll, 29 Tex., 332 to 335; 9 Tex., 372, 429, 537; 6 Tex., 492; 4 Tex., 252; 15 Tex., 507; 19 Tex., 312; 22 Tex., 187; 4 Tex., 455; 9 Tex., 428; 14 Tex., 592; 12 Tex., 418; 20 Tex., 118; 28 Tex., 101; 28 Tex., 566; 27 Tex., 490; 9 Tex., 502; 20 Tex., 728; 24 Tex., 543; 3 Tex., 142, 147; 27 Tex., 438.

*Goodrich & Clarkson*, for appellee, cited: R. S., art. 1299; Stroud *v.* Springfield, 28 Tex., 649; Phillips *v.* Ayres, 45 Tex., 601.

GEO. T. TODD, SPECIAL JUDGE.— The issue presented in this cause is the same as that discussed in the case of Phillips *v.* Ayres, 45 Tex., 601, and involves the true lines and extent of the Maximo Moreno eleven-league grant of land, located in 1833 within the limits of what is now Bell county, Texas.

A material difference appears in the record of facts between this case and that of Phillips *v.* Ayres. In this case there is affirmative evidence, by both the original surveyor and his chainman, to the effect that the western and northern limits of the survey were in fact run and measured on the ground by the surveyor.

The facts in this case appear to be identical with those shown by the record in the case of Ayres *et al. v.* Watson, recently decided by the supreme court of the United States. See Sup. Court Reporter, vol. V, part 16, p. 644.

There are, it is true, many strong facts and circumstances shown, which before a jury might make it very questionable whether either the west or north line was in fact actually measured by the surveyor in making the original survey; and equally as strong facts tending to show that the east line was in fact so measured.

There is also proof, somewhat conflicting, as to the true location of the hackberry landmark called for in the grant as the northeast corner. These facts must be determined by the jury, and then, according to proper legal rules, the north line must be fixed. In the consideration of the charge of the court below as applied to the facts in this case, and of the weight and force to be given a line actually measured in the original survey, if one can be shown, over a line not actually measured, but only estimated, it becomes important to note the testimony appearing in this case as to the identity and length, by actual measurement, of the western boundary line.

If clearly identified and shown to have been actually run and measured on the ground by the surveyor, this line would become only second in importance and controlling force to an artificial or natural object or landmark equally well identified and established;

and of greater force, perhaps, than such landmark, concerning the identity and location of which there is uncertainty or conflict in the proof.

In examining the assignments of error we find that the first is too general and indefinite to be considered. See Rule 26, Supreme Court.

The remaining assignments all attack the charge given by the court below to the jury, and complain of error in refusing to give the special charges asked, and in refusing a new trial.

The second, third and fourth assignments complain: 1st. That the court fixed the burden of proof on the defense in respect to the main issue involving the true locality and extent of the Moreno grant; and second, after so fixing the *onus*, in refusing to allow the defendants to open and conclude the case.

In this the court did not err; because the defendants failed to bring themselves within the requirements of rule 31, laid down for the government of district courts in the trial of causes. And while they may have virtually admitted the survey and location of the plaintiff's certificate as well as her ownership, yet they failed to enter such admission of record, and the location and survey of her certificate was affirmatively proved by the plaintiff.

The effort of the defendants was, under a plea of not guilty simply, to prove affirmatively such a location for their admittedly superior title, as would cover and include plaintiff's land where she had alleged and proved it to be situate. In this the *onus* was correctly placed upon the defendants.

Under similar and perhaps fuller concessions of the parties in the case of Ayres *et al. v.* Watson, above cited (see pp. 643–4, Sup. Court Reporter), the burden of proof is held to devolve upon the defendant.

The fifth assignment covers the following portion of the charge, to wit: . . . "It is a matter of no consequence who made the original survey upon which the title issued, or which corner or line of said survey was first made." . . .

The latter clause, in reference to the time of making the corners or lines, when taken in connection with the context, and with the subsequent charge "to follow the tracks and footsteps of the surveyor" wherever they could do so with reasonable certainty, we think was applicable and correct.

But we are not so clear upon the clause that it is a matter of no consequence who made the original survey.

Perhaps this is true, provided the person making the survey be duly authorized; but we cannot see its applicability to this case, and

it does seem, where the persons who made the survey were witnesses, that it might tend to affect the weight or degree of credit which the jury might attach to their testimony, notwithstanding the general rule given in the conclusion of the charge. R. S., art. 1317.

In this view it was error, and we cannot say it may not have affected the weight of evidence in the minds of the jury.

The charge that "it is as lawful and persuasive to reverse courses as to follow them in the order given in the title," we think is correct, as it is qualified and controlled by the preceding instruction requiring the jury to follow the footsteps of the surveyor wherever the same can be found, with reasonable certainty, and only to follow course and distance so far as the same shall not be in conflict with such actual traces or measurements made upon the ground. Phillips v. Ayres, 45 Tex., 607; Pearson v. Baker, 4 Dana, 321; 4 Monroe, p. 32.

We are of opinion, however, that it would not be proper to reverse the calls, and to run in reverse from the southeast corner for the purpose of ascertaining where the northeast corner would be found, by the measurement called for in the grant, if in fact the east line was not actually measured at the time the survey was originally made, there being affirmative evidence showing that the western and northern lines were actually measured on the ground.

Whether all or any of the lines were in point of fact measured on the ground should be submitted to and decided by the jury; and if all were so actually measured, then the calls may be reversed; if not, they should not be.

The seventh assignment embraces the following charge: . . . "If a survey can be made in different ways, and there is a doubt as to the proper way, that construction is to prevail which is most against the party claiming under the uncertain grant." . . .

While this is undoubtedly correct as a rule of law (see Pearson v. Baker, 4 Dana, above cited), yet we doubt the propriety of the charge under the facts in this case, where the only uncertainty seems to be in the north line of the grant, which must be fixed either by lengthening the eastern line or shortening the western, as called for in the grant. The burden of fixing this north line rested upon the defendants, and the jury might well have been charged that, unless it was done so as to cover or include the plaintiff's land with reasonable certainty and by a preponderance of credible evidence, they would find for the plaintiff.

The eighth assignment attacks the following charge, to wit: . . . "The title also describes the northeast corner as being at

a point north twenty degrees east three thousand five hundred and twenty varas from where the east line of the grant crosses Cow creek; and if you are satisfied from the testimony where this point is, said point will be the true northeast corner of said grant, unless under the preceding instructions you are able to locate said corner by the two hackberry trees mentioned in the title." . . .

It was right to instruct the jury to look first for the landmark called for in the title, to wit, the hackberry trees, or spot where they had been, as fixing the true northeast corner; but in case the evidence failed to satisfy them with reasonable certainty as to that landmark, or the spot where it had stood, it was serious error to instruct them in effect that the only remaining alternative was to let the course and distance called for in the grant on a part of the eastern boundary control in fixing that corner.

Especially is this so as to the distance, when it is so uncertain from this record whether the distance on this line was actually measured on the ground or was only computed or surmised by the surveyor.    Bolton v. Lann, 16 Tex., 112.

The quotation of this call from the title by the court in his charge evidently influenced the finding of the jury fixing the northeast corner at that particular distance from Cow creek.    This finding is not only manifestly against the evidence as to the measurement by the surveyor of the west line for a distance of twenty-two thousand nine hundred varas from the beginning corner, and the further measurement south seventy degrees east of the north line a distance of twelve thousand five hundred and eighty varas, and of the traces of old blazes on or near that line, but it is also manifestly against the evidence of the appellee showing a well marked and defined line on the proper course extending on beyond the point where distance ends on the east boundary for five hundred and sixty varas further to a point where two marked hackberry trees once stood.

We deem it proper to remark that the original survey, and the facts in connection with it, show many calls for natural objects other than those called for at the corners on the river, and that these natural objects, together with the calls for course and distance, should all be considered in determining where the northern boundary line of the grant was originally established.

The court did not err in refusing the special charges asked by the defendants; but for the errors above specified the judgment must be reversed and the cause remanded for a new trial.

It is accordingly so ordered.

REVERSED AND REMANDED.

[Opinion delivered June 1, 1885.]