## PREMIER ROYALTY CO. et al. v. NEW BIRMINGHAM DEVELOPMENT CO.

### No. 5696.

Court of Civil Appeals of Texas. Texarkana.

March 7, 1941.

Rehearing Denied April 17, 1941.

Norman, Stone & Norman, of Jacksonville, Shook & Shook, of Dallas, and Nelson Jones, of Houston, for appellants.

M. M. Guinn, of Rusk, for appellee.

WILLIAMS, Justice.

The appellee, New Birmingham Development Company, filed this suit in statutory form of trespass to try title action, describing 1,121 acres of land, more or less, out of the Levi Jordan League H. R. Survey in Cherokee County. Appellants, Premier Royalty Company, W. H. Shook, and others not necessary to name, defendants below, filed a disclaimer to the land described in plaintiff's amended original petition, save and except that portion situated east of a certain line described in their answer and later discussed herein. To that portion lying east of said line, defendants answered with a plea of not guilty, a general demurrer and denial. The litigation resolved itself mainly into a boundary line question.

The Jordan H. R. was surveyed and located by Jeremiah Strode in January, 1835, with its field notes as follows:

"Then surveyed for Levi Jordan, one League of land, adjoining Zacheus Gibbs on the waters of the Neches and also adjoining Jesse Jones Survey:

"Beginning at his S. W. Corner of Jesse Jones, a post in a mound 1st corner from which a B. Jack 14 inches in dia. brs. N. 30 E 14.1 vrs. dist., another B. Jack 10 inches in dia. brs. N. 60 E. 50 vrs. distant;

"Thence S 10 E 4390 varas Zacheus Gibbs line, set a post and made a mound 2nd corner from which a red oak 20 inches in dia. bears N 55 E 51.8 vrs. dist., another red oak 14 inches in dia. brs. N 65 E 50 vrs dist.;

"Thence N 80 E with Gibbs line 560 vrs. a creek 4 vrs. wide C.S. 1494 vrs. Gibbs corner, 5694 vrs. set a post and made a mound 3rd corner from which a B. Jack 14 in. in dia. bears S 70 E 8.8 vrs. distant a hickory 13 inches in dia. brs. N 65 W 13.4 vrs. distant;

"Thence N 10 W 4390 varas set a post and made a mound 4th corner in Jesse Jones line from which a B. Jack 6 in. in dia. brs. S 22 E 1 vara dist., a pine 10 in. in dia. brs. S 40 W 7 vrs. dist.;

"Thence S 80 W with Jones line 5,694 varas to place of beginning. * * *"

A few days prior to Strode's location of the Jordan, he surveyed out and located the Jesse Jones and the Zacheus Gibbs H. R. Surveys. Jones' south boundary line is called to run N 89 E. Jordan's north boundary line called to run S 80 W is in conflict. There is no conflict in the patent calls for Jordan's south boundary line and Gibbs' north boundary line to run N 80 E. The bearing trees of the Jordan are not to be found. The south boundary line of the Jesse Jones survey running N 89 E and its southwest corner as now located upon the ground are agreed upon. There is no dispute that Jordan's west boundary line as now located on the ground runs S 10 E as called for in its patent.

Appellee's pleading describes the land sued for, namely:

"* * * and beginning at the Northeast corner of the Levi Jordan League, being at the point of intersection with a line running N 10 deg. West from the Southeast corner of the Jordan League, with the South line of the Jesse T. Jones League, and the said Southeast corner of the said Jordan League being located at a point shown by a large rock on the East side of a road running north and south about 30 feet from the end of a lane from the west and from which rock the stumps of the Black Jack tree brs. S 11 E 9 vrs., the Hickory tree brs. N 60 W 12 vrs., described in the original field notes are found, and which point is * * *

"Thence South 10 East 2614 vrs. to the S. E. corner of the N. E. quarter of said Levi Jordan League;

"Thence South 89 West 2876 vrs. to a stake at the Southwest corner of the Northeast quarter of said Levi Jordan League and at the most Eastern Southeast corner of the Mrs. E. Dupree tract of land in said survey; * * *."

Omitting other calls, the last call for course reads: "Thence North 89 East."

Defendant Shook is the fee owner of the David W. McNabb Survey, located in 1853, and the I. & G. N. Ry. Co. Survey located in 1877. The beginning corner and first two calls in the McNabb Survey (omitting witness trees) reads: "Beginning at J. M. Nelson's N. W. cor. a stake; Thence West 610 vrs. to Joseph T. Cook sur. 1470 vrs. to the N. E. cor. of the Levi Jordan League sur. on the South line of the Jesse Jones sur. a stake from which a pine 13 inches in dia. brs. S 48 W 9 vrs, another 15 in dia. brs. N 89 W .9 vrs; Thence S 10 E with Jordan's East boundary line * * *."

The Nelson Survey was located in 1844. There is no dispute over the location of Nelson's northwest corner. The Cook field notes were not introduced. The railway company survey calls to begin at McNabb's southeast corner. The west line of the railway company survey is called to run N 10 W to McNabb's south boundary line, but does not call for Jordan's east boundary line. Nearly three years prior to the filing of this suit Shook erected a barbed wire fence which purported to enclose his two surveys. The north terminal of his west line fence, witnessed by several trees, a pine stump, and a pine stump-hole not necessary to describe, is on the south boundary line of the Jesse Jones Survey at a point which the undisputed evidence shows to be 5700.9 varas east from Jesse Jones' southwest corner and 1,470 varas west of the northwest corner of the J. M. Nelson Survey. The west line fence from above point ran south 10 degrees 56 minutes east for the distance of the west boundary line of McNabb and railway surveys. Within a few feet west of this west fence there is a well-marked line which runs from the Jones south boundary line to a point opposite and west of the southwest corner of the I. & G. N. Ry. Co. Survey. There are at least two sets of marks upon this line, the older having been made about the year 1912, some twenty-five years prior to the institution of this suit.

The jury found "that the S. E. corner of the Jordan survey was established by Strode at a point now to be located at a rock upon the East side of a road running in a north and south direction about 30 ft. from the end of a lane from the west;" that from this point the Jordan east boundary line is a straight line having for its course N 10 W to the south boundary line

of the Jones; and that the true northeast corner of the Jordan was not at the point 5700.9 varas from the southwest corner of the Jones Survey. Upon these findings the court entered judgment for appellee for land sued for. The corners and lines described in the judgment follow the pleadings and theory of appellee, reading:

"* * * beginning at the Northeast corner of the Levi Jordan League, being at a point of intersection with a line running N 10 deg. West from the Southeast corner of the Jordan League, with the South line of the Jesse T. Jones League, and the said Southeast corner of the said Jordan League being located at a point shown by a large rock on the East side of a road running north and south about 30 feet from the end of a lane from the West and from which rock the stumps of the Black Jack tree brs. S 11 E 9 vrs., the Hickory tree brs. N 60 W 12 vrs., described in the original field notes are found, and which point is also the westerly Southwest corner of the H. R. Jones Survey and the South corner of the W. S. Herndon Survey, and is also the S. E. corner of the Bill Wilcox tract of land located in the S. E. corner of said Jordan League; the measurement of the East line of the Jordan League being 5735 vrs. and the said intersection of this East boundary line with the South boundary line of the Jesse T. Jones League being at a point 1324 vrs. West of the Northwest corner of the James M. Nelson Survey;

"Thence South 10 East 2614 vrs. to the Southeast corner of the Northeast quarter of said Levi Jordan League; * * *."

Omitting other calls, the last reads: "Thence North 89 E."

In 1847, twelve years after the Jordan Survey had been located, surveyor Absalom Gibson located the Mary S. Harrison section survey, reading: "* * * beginning at a post the S. E. corner of Levi Jordan League from which a B. J. 15 in. in dia. brs. So. 60 deg. E 9 vrs. a hickory 12 in. in dia. brs. North 60 deg. W. 13 vrs., Thence So. 80 deg. W. 860 vrs. a branch at 1000 varas a post * * *. Thence So. at 95 vrs. a branch at 280 vrs. another at 1220 vrs. another at 1336 vrs. a post * * *. Thence East at 210 vrs. a branch at 1296 vrs. a post, * * * Thence north 1500 vrs. a post from which a P. O. 12 inches in dia. brs. W 2 vrs. dist. a B. J. 14 inches in dia. brs N 18 E 9 vrs. distant * * *. Thence West 311 vrs. to the beginning."

Surveyor White, witness for appellee, testified that above two last-mentioned witness trees are standing; that the rock now situate upon the ground is 311 varas west of Harrison's northeast corner witnessed by above trees. On the following map, "R" represents the present location of an iron-ore rock "about the size of a man's hat", which according to Harrison patent calls would be its beginning point; ABCD represents the calls in the Levi Jordan Survey according to its field notes. AMS is the agreed Jesse Jones south boundary line; "A" the agreed northwest corner of the Jordan; AORS the Jordan Survey as reconstructed under appellee's theory; and the shaded area, the land in controversy.

son in 1847 went upon the ground and then located the post, mound and two bearing trees called for in the Jordan patent to mark its southeast corner. In 1860 one Townley, in an application to the Land Commissioner's Office to patent alleged unappropriated public lands, filed field notes which described the area between a line run from the southwest corner of the Jordan N 80 E and a line S 80 E. Appellee relies upon the refusal of the Land Commissioner to grant this application to support his claim that Jordan's south boundary line ran S 80 E. Explanation for the refusal as appears on the application and field notes reads: "Survey cancelled on account of conflict, May 7, 1870." This

Appellee's theory is that Strode ran Jordan's south boundary line S 80 E instead of N 80 E and actually located Jordan's southeast corner at the point "R", and that surveyor Gibson in calling for Jordan's southeast corner as the beginning point in the Harrison Survey is evidence that Gib-

could refer to conflict with the Jordan and it could refer to conflict with the Zacheus Gibbs. There is evidence to the effect that various property owners to the south had fenced to the line running S 80 E and that the people in that area generally recognized such line as marking the south bound-

ary line of the Jordan. The record does not indicate the owners of any of the area north of such line, except that of appellee located in the northeast quarter of the Jordan. The description of the Bill Wilcox tract mentioned in the judgment is not shown in this record. White claims to have found on the S 80 E line three old trees with Spanish land marks, about 100 years old. He locates a marked tree about 1,000 varas N 10 W from the rock. He also claims to have located the creek called for in the Jordan patent at 560 varas from Jordan's southwest corner by running Jordan's South boundary line S 80 E. Several witnesses testified that it was the general reputation in the community that the Jordan south boundary line ran S 80 E and the rock was situated at or near its southeast corner.

There is not a patent or set of field notes in this record that calls for a rock to mark the southeast corner of the Jordan Survey. The witnesses do not know who placed the rock at the present location, or when, or why, if in fact it had been placed there by human hands. All the witnesses who testified about the rock and its location in reference to the trees called for in Jordan's patent or to any tree in the area, all being offered by the appellee, agree that it is within a field near the mouth of a lane running east and west and near a road that runs in a northerly direction. Witness Bill Wilcox locates the southeast corner of the Jordan at the rock and testified that it is "Maybe 20 feet, something like 15 or 20 feet East and from the road, * * * something like that would be my guess;" and thought that the rock had been there about 25 years, but was not sure. This witness claims to have been present in 1935 or 1936, at which time he claims some stumps were dug up in his effort to locate some witness trees at that corner, and found some bark in a stump-hole at "Papa's S. E. corner" and "as I remember, the corner was a rock." Another witness located the rock on "the slope of the East side of the road." Another witness who claims to have known the location of the Jordan southeast corner for 40 years, testified that there were trees at the corner when he first went there—"I wouldn't be positive whether oaks, hickories, some kind of tree like that; there is a big rock placed there at the corner, can't say whether it has been put there since the trees disappeared, or whether it was there at that time. Somebody cut down the trees and made a field there, and the rock is just inside the field. It looks to me like the rock is near where the trees stood before they were cut down some 25 years ago." Another witness located the rock north of the road.

The bark Wilcox claims to have found in a stump-hole in the area would not be certain proof that it was off the trees called for in the Jordan patent, or if in fact it was bark off any blackjack or hickory tree. White's testimony that the rock is located 311 varas west from Harrison's northeast corner and thus marking Harrison's beginning corner, is not certain evidence that it also marks Jordan's southeast corner. Gibson, who located the Harrison, a junior survey, calls his north boundary line to run S 80 W from his beginning; and to run due west from his northeast corner and thus created a bending north boundary line. His plat shows a straight north boundary line running in a northeasterly direction. Gibson located the Nathan Hamilton Survey and called its west line to run with Jordan's east boundary line N 12 W instead of N 10 W. He also located the J. M. Box Survey. He called for the north boundary line of the Box to run west with Jordan's south boundary line 990 varas and placed this line some 450 to 600 varas north of the S 80 E line as contended for by appellee. White locates the rock as marking Harrison's beginning corner, Herndon's S. S. corner and H. R. Jones southwest corner. A working sketch or map out of the General Land Office offered by appellee locates the Herndon S. S. corner and H. R. Jones' southwest corner approximately 100 varas, north of Harrison's beginning point. This sketch further shows the Jordan south boundary line to run N 80 E, and the Gibbs north boundary line to run likewise. This sketch indicates a conflict between the Jordan and McNabb but none south of the McNabb. From the foregoing observations it is evident that the rock corner is highly controversial and uncertain.

To give effect to this rock as marking Jordan's southeast corner will violate Jordan's patent call to run its south boundary line N 80 E with Gibbs' north boundary line called to run N 80 E and to pass the latter's northeast corner on this course at 1,494 varas. The Jordan would overlap into the Gibbs, a senior survey. It would give effect to a rock, not called for in any

patent of any survey, as marking Jordan's southeast corner. The bending or beginning corner of the Harrison, a junior survey, would control the calls in the Jordan. The Jordan with its southeast corner located at the rock when so reconstructed according to the terms of the judgment will violate every call for distance in its field notes. The survey as reconstructed by surveyor White is represented on the map by AORS and back to "A." This gives Jordan's west boundary line a distance of 4,544 varas instead of 4,390 from the agreed northwest corner; the south boundary line 6,048 vrs. instead of 5,694; the east boundary line to reach Jesse Jones south boundary line 5,737 varas instead of 4,390, an increase of 36 per cent in this line; and the north boundary line to reach the place of beginning 5,844 varas instead of 5,694. It would create an excess of 795 acres in the Jordan Survey and a shortage in the acreage called for in the McNabb and railway patents. To give effect to this acreage and change in the configuration of the Jordan would violate the manifest intention of the State and of surveyor Strode, as expressed by the terms of the land certificate, the field notes, and the patent to carve out and set aside out of the unappropriated public domain of Texas a league of land in a rectangular parallelogram shape. With such results as above noted, why proceed from the disputed rock corner to locate Jordan's northeast corner, when this record discloses an undisputed Jordan northwest corner, an agreed north boundary line and an undisputed west boundary line with which to locate Jordan's northeast corner? If the call from the admitted Jordan northwest corner be reversed and run east with the agreed south boundary line of the Jesse Jones 5,694 varas, the distance called for in the Jordan patent, and the other calls in the patent for course and distance be given effect, the Jordan, from the evidence in this record, can be located upon the ground today. Only the call for its course S 80 W on its north line, because of conflict with the Jesse Jones, a senior survey, would be disregarded. "* * * if all the calls cannot be followed, as few should be disregarded as possible, so that that construction is favored which gives effect in a measure to every call of the description and does least violence to the calls." 11 C.J.S., Boundaries, § 3, p. 540. Or as stated in 7 T.J. p. 165: "When all the calls cannot be followed, as few should be disregarded as possible, and effect given to the one or more which will result in the least conflict." Wilson v. Giraud, 111 Tex. 253, 231 S.W. 1074; Matador Land & Cattle Co. v. Cassidy-Southwestern Comm. Co., Tex.Civ.App., 207 S.W. 430; State v. Sullivan, 127 Tex. 525, 92 S.W.2d 228. "The rule should be adopted which is most consistent with the intention apparent upon the face of the grant as ascertained from all the surrounding circumstances." Phillips v. Ayres, 45 Tex. 601, 606. "In locating lost [obliterated] corners, computations should be made from the nearest known corner" and "may be found or located by reversing the calls of the survey." 11 C.J.S., Boundaries, § 13, p. 554. When the foregoing rules of construction are applied to the facts of this record, appellants were entitled to an instructed verdict, as requested, that plaintiff take nothing by its suit as to the land in controversy. Wilson v. Giraud, supra; Petty v. Paggi Bros. Oil Co., Tex.Com. App., 254 S.W. 565; Kirby Lbr. Co. v. Adams, 127 Tex. 376, 93 S.W.2d 382; Matador Land & Cattle Co. v. Cassidy-Southwestern Comm. Co., supra; Phillips v. Ayres supra; Harrell v. Morris, Tex.Sup., 5 S. W. 625; Gill v. Peterson, 126 Tex. 216, 86 S.W.2d 629; Standefer v. Vaughan, Tex. Civ.App., 219 S.W. 484; State v. Sullivan, supra; Taylor v. Higgins Oil & Fuel Co., Tex.Civ.App., 2 S.W.2d 288; Lomax v. Rowe, Tex.Civ.App., 3 S.W.2d 498.

The statement above, that the Jordan boundary lines can be located by reversing the call from its northwest corner is not to be construed as adjudicating or locating its boundaries on the ground. Such an adjudication is not required in the disposition of this cause, for only that portion of its east boundary line adjacent to the McNabb and railway surveys are involved in this suit. The burden of proof rested upon appellee to establish that the Jordan patent embraced the land in controversy within the fence now in the possession of defendant Shook. In this, appellee failed to meet the required quantum of proof. Because of the disposition herein reached, a discussion of some 100 other assignments of error, some of which present interesting questions of law, will be pretermitted.

The judgment of the trial court will be reversed and judgment here rendered that appellee take nothing as to that part of the land described in appellee's first amended original petition situated east of the

fence; said fence being situated on Jesse Jones' south boundary line 5700.9 varas east of Jesse Jones' southwest corner, thence running south 10 degrees 56 minutes east for a distance of 2123.4 varas; and as to the balance of the land sued for, to all of which appellants disclaimed, that appellee do have and recover of and from appellants the title and possession of same.

Affirmed in part and reversed and rendered in part.