## THE TREASURER OF THE STATE v. J. B. WYGALL ET AL.

1. RES ADJUDICATA—SUIT AGAINST THE STATE.—Suit was brought February 5, 1867, under article 3676 of Paschal's Digest, for assets of an estate deposited with the State treasurer, in default of heirs. Subsequently, March 20, 1871, suit was brought by other claimants. The latter suit was first prosecuted to final judgment. In the first suit, the judgment rendered in the second was pleaded in bar: *Held*, That until such judgment is set aside in some proceeding for that purpose, being a judgment of a court of competent jurisdiction, it must be respected to the extent that it would protect the State from a subsequent inconsistent adverse judgment; and held error in the court below to disregard such plea.

2. ESTATES—SUIT FOR ASSETS AGAINST THE STATE.—Suit by heirs may be maintained for assets, whether reduced to funds by collection or not. Heirship being established, the purpose of the law requiring the deposit is obtained.

3. SAME.—The same strictness is not required in such cases as in other suits against the State.

APPEAL from Travis. Tried below before the Hon. A. S. Walker, special judge.

On February 5, 1867, Mildred Ann Wygall (widow of John

Wygall) and R. J. Clark brought suit in the District Court of Wharton county, claiming to be the only heirs of John C. Clark, deceased, against M. H. Royston, at that time treasurer of the State of Texas. The petition alleged the death of John C. Clark intestate in Wharton county; that his estate had been administered, and no heirs appearing, the administrators—Dennis and Whitten—had deposited in the State treasury the assets of said estate, in promissory notes, &c., amounting to $384,428.62.

The prayer asked a decree "for the delivery to said petitioners of all the said assets, notes, papers, and effects of said estate," and for general relief. Annexed as an exhibit to the petition was a certified copy of the treasurer's receipt, giving items of the assets. In the progress of the suit the death of the original plaintiffs was suggested, and their heirs were made parties.

April 26, 1867, the defendant answered, Wells Thompson, district attorney, and Moore, Webb & Cook, attorneys, filing a general demurrer and special exceptions, as follows:

(1) It is not alleged that said assets have been collected by the State of Texas or by the defendant, but suit is brought for the choses in action described in the petition.

(2) Other exceptions extended to the modes of stating the facts alleged.

The transcript does not show the pleadings upon which the first trial, on July 11, 1871, in this case was had. The judgment was reversed. (46 Tex., 447.)

The case, as directed by the Supreme Court, was brought to Travis county.

On October 24, 1878, the attorney-general filed an amended original answer, (amending answer filed April 26, 1867, and amended answer filed March 19, 1869,) presenting as defenses: (1) General denial. (2) The rendition of final decree in 1871, in the case of Bishop Clark *et al. v.* The State Treasurer, and the judgment of the Supreme Court, on appeal, affirming the decree, in which Bishop Clark and others were adjudged to

be the heirs of the deceased, John C. Clark, and directing that the assets of the estate be delivered to the said plaintiffs. (37 Tex., 686.)

(3) The treasurer at the time (Dorn) further answered that there were in the State treasury no assets belonging to the Clark estate, nor had been since he had assumed the duties of the office of treasurer, &c.

(4) That there are other parties asserting rights as heirs of said John C. Clark besides Wygall *et al.* and Bishop Clark *et al.*, and specifying a suit pending in Fort Bend county, brought by Warren II. Clark and others claiming to be heirs, who are alleged to be necessary parties to this suit.

October 24, 1878, in replication to the amended petition filed same day, plaintiffs excepted to it as insufficient, denied its allegations, and, in avoidance, alleged "that they were not bound by the Bishop Clark judgment; that plaintiffs had attempted to intervene in said suit and the State, by its authorities, refused to permit them; that an attempt was made to consolidate said suit—Bishop Clark *v.* The Treasurer—with this action, which the State, by its judge, also refused."

"They further say that this suit was brought in Wharton county, in which the estate was administered on, February 5, 1867. The venue was changed to Fort Bend county October 28, 1867, was sent back to Wharton county October 29, 1868, and was pending in that court when the suit of Bishop Clark *v.* Honey, Treasurer, &c., was filed in said court, March 10, 1871. It was again sent by the court to Fort Bend county, where it was tried on the 12th of July, 1871, and verdict and judgment in favor of these plaintiffs for all the property of the estate, &c., in the hands of the treasurer, and which judgment was in force at the time of the trial of the case of Bishop Clark *v.* Honey in Wharton county, December 12, 1871. That the suit was removed by special act of the Legislature of the State of Texas from Fort Bend county to Travis county, (said act approved May 19, 1871,) and

whilst the suit of Clark v. Honey was pending in Wharton county; that the passage of the act was procured by parties interested in the case of Clark v. Honey, (naming the parties,) and was fraudulently procured by the agents and attorneys of Bishop Clark, deceased, to enable them to get their case first before the Supreme Court, &c.," (the plea gave a history of the proceedings in the Bishop Clark case and of the proceedings subsequent to its affirmance, touching the claims,) and insisting that the judgment was fraudulently obtained and had not been recognized as binding by the State authorities.

And further plea, setting up specific acts on the part of attorneys, officials, &c., relied on to annul the Bishop Clark judgment for fraud.

Exceptions to the replication were sustained as to the allegations of fraud relied on to annul the Bishop Clark judgment.

The exceptions of plaintiffs to the answer pleading in bar the Bishop Clark judgment were sustained. The district attorney asked a continuance, for the purpose of making other claimants parties to the suit. This was refused.

No jury being demanded, the court hearing the case gave decree requiring the treasurer to deliver, &c., the "assets, funds, notes, deeds, and title papers of the said estate to the plaintiffs." The State appealed.

On the trial there was testimony as to heirship of the plaintiffs to the deceased, John C. Clark. The treasurer's receipt of assets was read, showing notes, &c., to have been deposited with the treasurer to the amount of $384,425.62. The receipt of Attorney-General William Alexander was as follows:

"Received, Austin, Texas, July 17, 1873, of B. Graham, State treasurer, the following promissory notes belonging to the estate of John C. Clark, deceased, certified copies of which are retained in the hands of the treasurer.

(Signed)        WM. ALEXANDER, *Att'y-Gen.*"

—followed by a list of the notes. Also the following receipt:

"Received this 17th day of July, 1873, of William Alexander, attorney-general, the notes specified in the foregoing

descriptive list, [being the list receipted for by Attorney-General Alexander,] which were placed in my hands in order that they may be used as evidence in suits thereon in which I am retained as counsel by Bishop Clark and others, and I am authorized by said attorney-general to appear as associate counsel for the State of Texas, my fees to be paid by said Bishop Clark, and not by the State of Texas.

(Signed)          WM. HAMBLIN."

The statement of facts proceeds: "Plaintiff read a correspondence between George Clark, attorney-general, [who succeeded Alexander,] and William Hamblin and W. Pierson, district attorney of Wharton county, the substance of which is, that George Clark, attorney-general, writes to Hamblin to account for the moneys collected by him on the notes receipted for by him and to return those uncollected. Hamblin replies that they are in the hands of Pierson, the district attorney. The attorney-general writes to Pierson to account, &c. Pierson replies that he never had possession of the notes; that they are in the hands of Hamblin. The attorney-general (George Clark) writes again to Hamblin to account, &c., and he replies that 'his clients—Bishop Clark and others—hold him responsible for the notes, and have ordered him not to give them up.'"

It was shown that suit was brought on many of the notes, judgments obtained, &c.; lands sold under foreclosure of liens, and in some instances the lands were bid in for the State. Some claims were compromised, the attorneys for Bishop Clark and others receiving the proceeds, &c.

Plaintiffs showed demand upon the treasurer for the assets, &c. They also proved that long after this suit was brought (February 5, 1867) Bishop Clark and others had (on March 20, 1871) filed their suit, upon which the judgment in Clark *v.* Honey was rendered, and filed in same county; that plaintiffs Wygall and others had filed a petition to intervene in said suit of Clark *v.* Honey, which was refused by the court; that plaintiffs had filed a motion to have said suit consoli-

dated with this suit, which was also refused by the court; that said suit ( Clark *v.* Honey ) was pending in Wharton county at the time of the first trial in this case (in Fort Bend county); and that they (the Bishop Clark party) had procured the special act of the Legislature passed removing the case to Travis county.

Defendant then showed by a certificate from A. J. Dorn, the treasurer at the time of trial, and by his testimony, that the only assets of the estate of John C. Clark remaining in the treasury, and which were there when he entered upon the duties of the office, were some Confederate notes and some cotton bonds; that the receipt of William Alexander and of William Hamblin, on file in the office, (above set out,) showed that the notes and evidence of indebtedness had been withdrawn; that no moneys had been paid into the treasury upon any of said notes, nor any return made of action had upon them.

The assignments of error were as follows:

1. The court erred in overruling defendant's demurrer to plaintiffs' original petition.

2. The court erred in sustaining plaintiffs' demurrer to so much of defendant's answer as set up claims of other parties and as set up the judgment of the District Court of Wharton county, affirmed by the Supreme Court, in favor of Bishop Clark and others.

3. The court erred in overruling defendant's demurrer as to part of plaintiffs' first supplemental petition.

4. Error in the judgment rendered, being for funds, lands, &c., when none were held, &c.

A further history of the matters involved in this appeal is given in the appeals in the cases of Bishop Clark *v.* Honey, 37 Tex., 686, and The Treasurer of the State *v.* Wygall, 46 Tex., 447.

*George McCormick,* for appellant.

I. A suit cannot be maintained against the treasurer for

choses in action under the law authorizing suits for the recovery of escheated property from the State. (Paschal's Dig., arts. 1354, 3676; Treasurer *v.* Wygall, 46 Tex., 454.)

II. One judgment having been rendered against the State for the property sued on, this was a sufficient answer to the suit. The statute which authorizes a suit against the State treasurer for escheated property never contemplated that more than one such suit could be brought. This is not an ordinary action as between citizens, but is in its nature a suit against a sovereign, permitted to be instituted by the grace of the sovereign authority.

III. It is an elementary principle of pleadings, that "the proof must correspond with the allegations and be confined to the point in issue." The issue made by the pleadings was the liability of the treasurer for the assets of the estate in his hands. The assets were particularly described as certain notes, mortgages, &c. The judgment is for lands, property, funds, notes, deeds, title papers, &c., with an order to the comptroller of public accounts to draw an order on the treasurer for said deeds, assets, funds, notes, title papers, and for all money that may have been collected by the officers of the State, or by their authority, on any of the notes, assets, and mortgages.

Therefore the judgment is not responsive to the prayer for relief, and the necessary proof to authorize such judgment could not have been introduced under the pleadings. (McKey *v.* Welch, 22 Tex., 390; Storey *v.* Nichols, 22 Tex., 90; Brown *v.* Horless, 22 Tex., 645; Hall *v.* Jackson, 3 Tex., 305.)

IV. The judgment was rendered for the assets of Clark's estate. The proof shows that there were no assets in the hands of the treasurer; that the State had turned over the choses in action described in plaintiffs' petition to the other claimants, who had recovered a judgment for the same in a court of competent jurisdiction.

*J. E. Shepard* and *Gardner Ruggles,* for appellees.—John C.

Clark died intestate, in Wharton county, Texas, in August, 1861. His estate was administered on by Dennis and Whitton, and sold by order of the County Court of Wharton county, under the act of November 15, 1864. Notes, bonds, and mortgages were taken. On the 20th of September, 1866, they were delivered to the State treasurer, who receipted for $384,428.62. On the 15th of September, 1877, Mildred Ann Wygall and Richard J. Clark filed their petition in the District Court of Wharton county, claiming to be the brother and sister and only heirs of John C. Clark, and asking judgment for the assets, notes, and effects of his estate in the hands of the treasurer, and other property of said estate. R. J. Clark and M. A. Wygall having departed this life, their heirs, the present plaintiffs, were made parties and prosecuted this suit. The venue was changed to Fort Bend county, and subsequently, by an act of the Legislature, to Travis county. The district judge presiding in Fort Bend county decided the act unconstitutional, and proceeded to try the case, which trial resulted in a verdict and judgment for plaintiffs. The State appealed and the judgment was reversed. (46 Tex., 447.) The cause then came to Travis county, and was tried before the Hon. A. S. Walker, special judge. A jury was waived and there was judgment for plaintiffs, which appellant now seeks to reverse. While this suit was pending in Wharton county, another suit was filed by Bishop Clark and others, (negroes,) claiming to be the children and heirs of John C. Clark. The plaintiffs in the case of Wygall *v.* The Treasurer sought to intervene in the case of Bishop Clark and others, and were refused by the court. They sought to have the causes consolidated, which was also refused. The attorney of B. Clark and others, one Guy Franks, was a member of the Legislature, and procured the passage of the act changing the venue of the Wygall case to Travis county, the effect of which was to get the Bishop Clark case tried first in the District Court and get it up and affirmed in the Supreme Court (37 Tex., 686) before Wygall's case ever could be heard.

Under that decision all notes, mortgages, accounts, &c., then in the hands of the treasurer, reached the hands of the attorneys for Bishop Clark and others, a great part being turned over to one Hamblin, who agreed to serve as the agent of the State, but who afterwards turned out to be in the employ of Bishop Clark and others. Much of it has been collected, but it is said that a small pittance only ever reached the hands of the negro claimants. In enforcing the collection of these notes, &c., several tracts of land were purchased by the State, and these lands are all that are now in reach of appellees. There can be no question that appellees are the true and legal heirs of John C. Clark. The testimony was so clear and convincing that the late attorney-general did not attempt to controvert it. No candid man can read even the condensed statement of it in the record and not admit it.

The first proposition of appellant is, " a suit cannot be maintained against the treasurer for choses in action." Ours is the converse.

The right to sue is conferred by the act of March 20, 1848. (Paschal's Dig., art. 1354.) It mentions funds alone, because under that law nothing but funds ever went into the hands of the treasurer. (Paschal's Dig., art. 1351.)

The law of escheats also allowed a suit, but was not confined alone to suits for funds, for in certain contingencies it allowed suits for property also. (Paschal's Dig., art. 3672.)

The law of 1864 (Paschal's Dig., art. 3676) changes the whole mode of managing escheated estates, and requires the assets to be placed in the hands of the treasurer. It does not take away the right to sue, but it changes the thing to be sued for. It must be construed in connection with the former laws and made to harmonize, if possible. There being now nothing but assets in the hands of the treasurer, there is nothing else to sue for. The reason of the law being changed, the law itself is changed. If these parties are the heirs of John C. Clark, they are entitled to his estate,

whatever it may consist of and wherever it may be.   This is the real right which our statute meant to recognize.

In answer to first proposition under second assignment of error, appellees say that if it be true that the law contemplates that but one suit should be brought against the State, then appellees had priority of suit, for their suit was filed a year or more before any other, and such objection applies to the suit of Bishop Clark and his judgment, and not to that of appellees.

As to the efficacy of the Bishop Clark judgment as a bar to their action, appellees were not parties thereto and are not bound by it.

They did in every manner known to the law seek to get into that suit.  The district attorney of Fort Bend county and appellees tried to have the two cases consolidated, and were refused.   Appellees tried to intervene in the Bishop Clark suit, and the district judge refused them the privilege.  Shall the State take advantage of its own wrong and preclude them by a judgment which it refused to let them controvert—one to which they were not parties, and to which she, by her officers, denied their right to be parties ?

The only other point made by appellant which we will notice is, that the judgment is without evidence and is not responsive to the prayer of the petition; alleging the proof to be that there were no assets in the hands of the treasurer. The proof shows that there were assets—cotton receipts and Confederate bonds.   No matter what their value may be, they belong to the heirs of John C. Clark, and they are entitled to recover them.   But the State had purchased some lands in endeavoring to collect the claims due Clark's estate. The sheriff had made no deed, but there was an equitable title in the State, and to that appellees were entitled as heirs of John C. Clark.   The prayer of the original petition was for the "assets and property of said estate, and for the assets, notes, papers, and effects of said estate of John C. Clark,

deceased." Broad enough, certainly, to cover everything for which judgment was rendered in this suit.

BONNER, ASSOCIATE JUSTICE.—In the year 1862 John C. Clark died in Wharton county, Texas, leaving an estate valued at over one-third of a million of dollars.

Property of the estate was sold and notes and mortgages taken therefor, and, the heirs being unknown, by order of the Probate Court the assets, notes, and mortgages were by the administrator delivered to the treasurer of the State on September 20, 1866.

Under the terms of the statute, in default of heirs the property would escheat to the State.

On March 28, 1871, suit was instituted under the statute in the District Court of Wharton county, against the treasurer, which in effect was a suit against the State, by Bishop Clark and his two sisters, who claimed to be the children and heirs at law of John C. Clark, deceased. At the December Term, 1871, upon verdict of a jury, judgment was rendered establishing their claim as such heirs and their right to the property.

This judgment, upon appeal, was affirmed by this court as then constituted. (Honey *v.* Clark, 37 Tex., 686.)

The present suit was instituted against the treasurer by Joseph B. Wygall and others, claiming to be an entirely different set of heirs of John C. Clark, for the same purposes and for the same property for which the suit of Bishop Clark and others was instituted, and was on former appeal before this court reversed and remanded. (Treasurer *v.* Wygall, 46 Tex., 447.)

The venue having been changed to Travis county, another trial was had on November 24, 1878, which resulted in judgment in favor of the plaintiffs, establishing their claims as the true heirs of John C. Clark, deceased, and adjudging that the treasurer of the State deliver to them all the property, funds,

and assets belonging to the estate which had been deposited with him on September 20, 1866, by the administrator.

From this judgment the present appeal is taken.

The treasurer-defendant in this suit, on behalf of the State, among other defenses, set up the former judgment in favor of Bishop Clark and others in bar of this suit. To this the plaintiff interposed a demurrer, which was sustained by the court; to which the defendant excepted, and assigns this with other alleged errors.

The property sued for was held by the State in trust for the heirs of John C. Clark, deceased, the same to escheat to the State in the event that such heirs did not appear and establish their claim thereto.

The object of the suit permitted by the State against itself was, that the heirs could thus assert and establish their claim, and that when this was done they might recover possession of the property. It is in the nature of a proceeding *in rem*, in which it devolved upon the parties claiming the estate to properly assert their rights.

The record discloses that the present plaintiffs were aware of the suit which had been instituted by Bishop Clark and others for the same objects as this, and which had resulted in a judgment establishing their claim to the property as the heirs of John C. Clark, deceased.

It seems to have been their misfortune that they were not permitted to intervene in that suit, and if the facts are true as asserted by them, it is, indeed, a sad commentary upon the history of the times during which that proceeding was pending.

If the State could in any case be shown to have been a party to a fraud, it certainly would not be presumed to have been such party when evidently she would lose all and gain nothing by the transaction.

The alleged fraud in that suit cannot be made available in this proceeding, as Bishop Clark and others, who were the

plaintiffs and beneficiaries therein, have not been made parties.

If the present plaintiffs were improperly denied the right to intervene in the suit instituted by Bishop Clark *et al.*, or if the court improperly tried that suit, without, of its own motion, having all necessary parties made when attention was called thereto, still that judgment is not void, and stands unreversed and in full force.

If it be conceded that these plaintiffs had no right to appeal therefrom, they doubtless had the right to have made the plaintiffs in that suit parties to this suit, and, by injunction or other appropriate remedy, have delayed them in the final execution of their judgment until they themselves could have been heard and their rights adjudicated.

It was not intended by the statute that the State, a mere depositary, should be subject to different adverse judgments by different parties in regard to the same subject-matter. If so, the treasurer might, as in this instance, be confronted with two judgments requiring him to deliver the same identical property to two different and adverse claimants. We do not decide but that in a proper case the plaintiffs in the former judgment against the treasurer, and others who may have obtained property belonging to the estate of John C. Clark, deceased, with notice of the alleged fraud, might not be made parties to this or some other suit in the nature of a bill in equity to vacate that judgment, and that, if the State still has in possession any of the property, she might also be made a party, and in this way the legal and equitable rights of all parties in interest might be fairly adjusted.

Until, however, the judgment in favor of Bishop Clark *et al.* is set aside by some proceeding for that purpose, we are of opinion that the same, being a judgment of a court of competent jurisdiction, must be respected to the extent that it would protect the State from a subsequent inconsistent, adverse judgment.

In our opinion, then, there was error in sustaining the de-

murrer of plaintiffs to the answer of defendant setting up the former judgment in favor of Bishop Clark *et al.*, for which the judgment below must be reversed.

As the case will be remanded, we will express an opinion upon a question presented by this record, and which, as it is relied upon on demurrer as being fatal to plaintiffs' cause of action, will arise upon another trial. It is contended by counsel for appellant, that, under the law authorizing suits for escheated property, this suit cannot be maintained against the treasurer for choses in action, but for the money only, after the same has been collected.

With the greatest deference for the views of the distinguished jurist who gave his individual opinion to this effect in this case on the former appeal, we are all of opinion, that although the letter of the law would authorize this construction, yet we believe that the evident intention and object of the statute would admit of one more enlarged and comprehensive.

The acts of November 15, 1864, (Paschal's Dig., art. 3676,) and of November 13, 1866, (11th Leg., 236, sec. 3,) providing that suits be brought on such assets in the name of the State, was, in our opinion, intended as directory upon the State and the courts to permit such suits to be brought, and the judgments thereon to be binding, in order that due diligence might be used in the collection of these claims. If, however, in the meanwhile, the assets had, by proper suit in a court of competent jurisdiction, been adjudged to have been the property of certain established heirs of the deceased, it is not perceived what good purpose could be subserved by depriving these heirs of the immediate possession and benefit of their property, or subjecting them to perhaps a higher rate of commission for collecting the same than they would incur as individuals, and in requiring the State, which no longer had any right, present or in expentancy, to these assets, to take upon herself the trouble and responsibility of

proceeding with the collection of the same, and which might be indefinitely postponed.

If the State should not succeed in the collection of some or all of these claims, because the parties owing them might be temporarily insolvent, it would not be contended that this should defeat the right of the heirs to the possession and benefit of them for what they might be worth; and it is not perceived that there is any substantial difference between that character of claims and those which could be collected.

The heirship being established, the purposes for which the deposit with the State was made were accomplished. The reason of the law having ceased, the law itself would cease.

Besides, it is believed that the same strictness to follow the letter of the statute permitting a State to be sued, should not be required in this character of suit, where the State is a mere depositary, as in other cases.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.