PLATT et al. v. VERMILLION et al.

(Circuit Court of Appeals, Fifth Circuit. January 23, 1900.)

No. 804.

1. RES JUDICATA—PERSONS CONCLUDED—ADJUDICATION OF BOUNDARY.
   A judgment in an action between individuals, determining that land claimed by one party under a filing made thereon as public land of the state was not public land subject to such filing, but was included within a tract previously granted, is not conclusive upon the state, nor does it render the question res judicata as against one subsequently filing thereon, who was not a party or privy to the action.

2. BOUNDARIES—DETERMINING SURVEY—REVERSAL OF CALLS.
   Where, in a suit involving the determination of a boundary, if effect was given to one of the calls for distance in the field notes of the survey, the last call was short, and left the survey unclosed, unless extended, other calls, having reference to the lines of other surveys, must be ignored, and the quantity of land embraced in the survey largely exceeded that intended, it was not error to charge that, if the jury believed that the lines and boundaries of the survey could be more certainly and definitely ascertained thereby, the calls of the survey might be reversed, and the lines traced the other way from the point of beginning, by which the shortening of only one line was necessary to give effect to all the other calls, and to make the quantity of land approximately what was intended; and this whether it was found that the survey was actually run upon the ground or not.

3. SAME—EVIDENCE—SUBSEQUENT SURVEYS CALLING FOR COMMON BOUNDARY.
   Where surveys are run and marked on the ground, the line so made governs over a call in the field notes for the line of a previous survey as a common boundary, and such call does not necessarily bind the two surveys together.

In Error to the Circuit Court of the United States for the Northern District of Texas.

The plaintiffs in error instituted two actions of trespass to try title against the defendants in error, which actions were consolidated and tried as one cause. Plaintiffs in error, in their first amended original petition, charge that on January 1, 1895, they were lawfully seised and possessed of the following lands, situated in Archer county, holding the same in fee simple, and allege that on January 1, 1895, the defendants in error entered upon said premises, and with force ejected them, and now unlawfully withhold the p_ssession thereof from them, to their damage $5,000, and pray for the restitution of said premises and for their damages, costs, etc. The defendants in error, some 11 in number, filed their special plea to the jurisdiction of the circuit court of the United States, alleging that they have never claimed said land jointly, but have at all times asserted a separate claim to their own tract, and to no more, and describe that portion of the land claimed by each defendant, which in amount and value would be below the jurisdictional amount of the circuit court, which special plea to the jurisdiction was overruled by the court. Thereupon the defendants in error filed and presented to the court their original answer and special plea of res adjudicata, as follows:

"Original Answer and Plea of Res Adjudicata.

"Filed Oct. 13, 1898.

"In the Circuit Court of the United States for the Northern District of Texas.

"Mrs. Agnes Platt v. A. Vermillion et al.

"Now come the defendants, and for special plea herein say that the plaintiffs ought not to have and maintain our aforesaid action against them, because they say that the matter which the plaintiffs attempt to litigate by this suit has already been determined by a court of competent jurisdiction, as hereinafter stated, and that the matter is now in res adjudicata as to the said

defendants, and plaintiffs plead said matter in res adjudicata, as follows: Defendants show that heretofore, to wit, on the ——— day of July, 1894, one C. C. Davis filed a certain suit in the district court of Archer county, Texas, against W. M. Coleman, Clyde D. V. Hunt, and Mrs. Lula P. Hunt to recover the title to and possession of 160 acres of land in Archer county, Texas, and that at the same time E. A. McDonald filed another suit in the same court against the same defendants to recover 160 acres near the other tract of land, to wit, the one claimed by Davis. The defendants answered in said causes, and afterwards, to wit, at the August term, 1894, of the district court of Archer county, said causes were consolidated by order of the court, and thereafter prosecuted under the name and style of 'C. C. Davis et al. vs. W. M. Coleman et al.,' and the court entered an order changing the venue in said court to the district court of Jack county, Texas; and on the 20th day of March, 1895, said cause came on for trial in the district court of Jack county, Texas, and resulted in a judgment for the plaintiffs E. A. McDonald and C. C. Davis against all of said defendants for the title to and possession of said land. From this judgment the defendants appealed to the court of civil appeals for the Second supreme judicial district of Texas, and on the 21st day of March, 1896, said judgment was duly affirmed by the said court. An application was made for rehearing, which was in all things overruled by said court, from which the defendants applied to the supreme court of Texas for a writ of error, and their application was dismissed for want of jurisdiction, and thereby the said judgment became final and conclusive as between the parties thereto and as against all persons claiming by, through, or under them. Defendants show that the question in controversy in this case and the question involved in the case of Davis et al. vs. Coleman et al., as above stated, are one and the same, and that the sole question in each case is as to the true location of the north line of the Brazos county school-land survey, situated in Archer county, Texas, and the true location of the John Minter and other surveys, north of said Brazos county, some of which were owned by said Lula P. Hunt at the time of the trial of said cause and at the institution of the said suit; and defendants show that the present plaintiffs in this suit claim title only and solely through the said Lula P. Hunt, arising after the institution of said suits, and that the true question in each case was as to whether there is a strip of land between the Brazos county school land on the south and the John Minter and H. & T. C. Ry. surveys on the north; and defendants further show that in said judgment it was fully determined and conclusively established that the said strip was not embraced in any of plaintiffs' said surveys, and that the title was not in plaintiffs to said land; that the said Davis and McDonald each claim 160 acres of said land strip, and the defendants in this case each claim 160 acres of said strip, and that the effect of said judgment was to fully establish the fact that the plaintiffs herein and their vendor, Mrs. Lula P. Hunt, had no title to said strip. Defendants further show that said strip contains in all about 2,000 acres, and lies wholly on the north side of the said school-land survey; that in the year 1897, at a regular term of the district court of Clay county, Texas, in a certain cause therein pending wherein J. T. S. Gant, E. C. Simmons, and W. H. Keen were plaintiffs and one C. W. Word and Robert Houssells were defendants, a part of the same strip was involved, and the question presented was as to the true north line of the Brazos county school land, and the true south line of the surveys belonging to the said Word on the north of said school land lying due east of said Minter,—the question, in other words, being as to whether there was a strip of land not included in said Brazos county and said Word surveys; that on the trial of said cause in said court a judgment was rendered in favor of said plaintiffs, and it was found and established that there was a vacant strip of land between said surveys, being a part of the same strip involved in this case. That said judgment so rendered is now final and conclusive, and has never been appealed from, and that by the rendition of said judgment it has become and is now res adjudicata as between all the parties to said suit, and is stare decisis herein. Wherefore plaintiffs say that the said judgments herein mentioned fully establish the fact that the plaintiffs ought not to prevail in this action, and that the land for which the plaintiffs are suing is a part and parcel of the strip of vacant land lying between said

Brazos school land and the old survey on the north thereof, and leaves no room for controversy or doubt that the defendants are entitled to said land. Wherefore defendants plead said judgments in bar of this action and pray for judgment for the title to and possession of said land, and for all costs of suit, and general relief.                                    F. E. Dycus, for Defts."

"And now come the defendants, and each for himself disclaims all rights, title, and interest in and to the lands in controversy, except that each defendant claims only the tract of land described as belonging to him in said original plea in abatement, etc. And each defendant says that he never did claim or possess any of the said land except said tracts, and that he has never claimed any land jointly with his co-defendants, but severally only; that is to say, the defendants have each claimed the tracts respectively claimed by him in his plea, and disclaimed as to all other land. As to the tract described and claimed by him in said plea (said plea being here referred to and made a part hereof) he pleads not guilty, and says that he is not guilty of the said supposed wrongs, injuries, and trespasses laid to his charge, nor any or either of them, in the manner and form as alleged by plaintiffs, and of this he puts himself upon the country.                            F. E. Dycus, Attorney for Defts."

In reply to the original answer and special plea filed by defendants in error, the plaintiffs in error filed and presented to the court their first·supplemental petition and plea of res adjudicata, as follows:

"Now at this come Mrs. Agnes Platt and Mrs. Lula P. Hunt, plaintiffs herein, and file this, their first supplemental petition in this cause, and by way of replication to defendants' original answer filed herein deny all and singular the allegations and averments therein set out, and call for strict proof of the same. Wherefore they pray as in their first amended original petition.

"And by way of further replication to defendants' original answer these plaintiffs say: That heretofore, on the —— day of ——, 1890, Mrs. Lula P. Hunt, then Mrs. Lula P. Dickey, was the sole owner and holder in fee simple of the lands and tenements set out and described in plaintiffs' first amended original petition, claiming and holding the same as a part of the four-league grant in the name of the Brazos county school land. That on the day and date aforesaid Warren West, Polk West, D. T. Meredith, and W. D. Youngblood filed upon said land, claiming the same to be vacant and unappropriated public domain of the state of Texas, and as such subject to their file and settlement under the homestead donation laws of said state. That the said Mrs. Lula P. Hunt, then Dickey, instituted her action of trespass to try the title in the circuit court of the United States for the Northern district of Texas, at Graham, against said parties, claiming said land to be a part of her said Brazos county school-land grant, and as such not subject to the files and settlement of said parties. That said parties answered in said cause, and were represented therein by counsel. That said cause was styled on the docket of said court as 'No. 179, Mrs. Lula P. Dickey v. Warren West et al.' That on the 27th day of October, 1890, said cause was tried by said court, and judgment duly rendered therein in favor of the said Mrs. Lula P. Dickey. That it was thereby determined and adjudged by said circuit court of the United States that said land was a part of the Brazos county school land, and was not vacant and unappropriated public domain of said state, and not subject to the files of said parties. And these plaintiffs further aver and charge that on the —— day of ——, 1890, Mrs. Lula P. Hunt, formerly Dickey, was the legal and equitable owner and holder in fee simple and in the peaceable possession of the land set out and described in plaintiffs' first amended original petition filed herein; that on said day and date R. K. Dunlap, Mrs. Woodward, J. B. Watson, G. W. Edgin, S. Kuykendall, G. L. Allen, and J. T. S. Gant entered upon said lands, claiming the same to be vacant and unappropriated public domain of said state, and as such subject to their files and settlement under the homestead donation laws of said state. That the said Mrs. Lula P. Dickey instituted suit in the circuit court of the United States for the Northern district of Texas, at Graham, against said parties. That said cause was styled on the docket of said court as 'No. 178, Mrs. Lula P. Dickey v. Tully Wilburne et al.' That on the 27th day of October, 1890, said cause was duly tried by said court, both plaintiffs and defendants therein being represented by counsel, and judgment was ren-

dered therein for Mrs. Lula P. Dickey; said court holding that said land was a part of the Brazos county school-land grant, and not a part of the vacant and unappropriated public domain of said state. Plaintiffs further aver that on the —— day of ——, 1892, J. T. S. Gant and G. W. Edgin again entered upon said land, claiming the same as vacant and unappropriated public domain of said state, and as such subject to their file and settlement under the homestead laws of said state. That said parties instituted the suit in the district court of Archer county, Texas, each claiming 160 acres of the land hereinbefore set out, which said causes were consolidated and prosecuted under the style of 'J. T. S. Gant et al. v. W. M. Coleman et al., No. 186.' That defendant Mrs. Lula P. Hunt, then Dickey, and W. M. Coleman, her foreman, were defendants in said cause. That defendants therein, to wit, Mrs. Lula P. Dickey and W. M. Coleman, claimed said land as a part of the Brazos county school-land grant, and as such not subject to the files and settlement of said parties. That the said cause was tried by the said court on the 4th day of March, 1892, all of said parties being present, and represented by counsel. That said court rendered judgment in said cause for Mrs. Lula P. Dickey and W. M. Coleman for said land, thereby holding and finding that said land was a part of the Brazos school-land grant, and not vacant and unappropriated public domain, and not subject to file and settlement of said parties under the homestead donation laws of said state. That said case, after the rendition of said judgment as aforesaid, was by the said Gant and Edgin appealed to the court of civil appeals of said state sitting at Ft. Worth, Texas, which judgment and decree was by the court of civil appeals in all things affirmed, thereby holding that said lands were a part of the Brazos county school-land grant as aforesaid. That all of said judgments were rendered by courts of competent jurisdiction, and are in full force and effect, and are unreversed. Plaintiffs further aver and charge that on the —— day of ——, 1894, Mrs. Lula P. Hunt, joined by her husband, Clyde D. V. Hunt, being the legal and equitable owner and holder in fee simple of the lands set out and described in her first amended original petition, and being in the actual possession of the same, in order and for the purpose of checking, restraining, preventing, and avoiding the annoyance and heavy expense of continued litigation over said land with any and all persons who should settle upon said land, claiming the same as vacant, filed her bill in equity in the circuit court of the United States for the Northern district of Texas, at Graham, claiming said land as a part of the Brazos county school-land grant in Archer county, and alleging that said land was not vacant and unappropriated public domain, and was not subject to settlement under the homestead laws of said state, and further alleging that one T. M. Cecil, surveyor of Archer county, Texas, had surveyed and was continually surveying and accepting files upon said land as vacant and unappropriated domain under the statute regulating homestead donations; that said cause was determined and adjudicated by said court on the 18th day of October, 1894, and a decree rendered by said court in favor of said Mrs. Lula P. Hunt against the said T. M Cecil as such county surveyor of Archer county, Texas, adjudging said land to be a part of the Brazos county school land, and not vacant land, and forever and perpetually enjoining and restraining the said T. M. Cecil as such surveyor, his agents, deputies, assistants, and successors in office, and attorneys from accepting any file or files upon said land from any one whomsoever, and from furnishing any one with field notes to said land, or any part thereof, who might or desired to claim the same as vacant or public domain, or subject to file or settlement under the homestead donation laws of said state. Plaintiffs further aver and charge that the defendants in this cause claim the land in controversy as vacant land under the homestead donation laws of said state; that said land as claimed by each of the defendants herein is a part of the land embraced in the decrees hereinbefore set out; that the plaintiff herein Mrs. Lula P. Hunt was a party to all of said decrees; that the land involved herein was involved in all of said causes; that the law and facts are the same in this cause as in all of those hereinbefore set out; that these defendants are urging the same defense and setting up the same claim from the same source as urged in all of said causes; that defendants knew of such decrees, and could have known of the same by mere inquiry; that they were notorious throughout Archer county. Plaintiffs further aver and charge that by reason

of the rendition of said decrees as aforesaid the fact that the land in controversy is a part of the Brazos county school land, and that it is not vacant and unappropriated public domain, and is not subject to file and settlement under the homestead donation laws of said state, has become a settled and established fact, and is now res adjudicata as to all persons so claiming the same, and is stare decisis herein. Wherefore these plaintiffs say that defendants cannot be heard to assert such claim, and that the decrees herein set out are a bar to defendants' claim; wherefore they pray as in their first amended original petition."

Demurrers were by each party presented to the court touching the sufficiency of the separate pleas of res adjudicata as presented by plaintiffs and defendants in error. Said demurrers were sustained by the court, and both pleas of res adjudicata were held insufficient as a plea in bar. The trial was had before a jury, which rendered a verdict in favor of the defendants in error for the land in controversy, and thereupon this writ was sued out.

Stanley, Spoonts & Thompson and R. F. Arnold, for plaintiffs in error.

F. E. Dycus, for defendants in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts). The plaintiffs in error claim the land in controversy to be a part of the Brazos county school-land grant of four leagues, and that in former judicial controversies between them and persons other than the defendants in error they obtained judgments in accordance with their contention. The defendants in error deny that the land in controversy is a part of the Brazos county school-land grant, and show that in other controversies between the plaintiffs in error and persons other than the defendants judgments were obtained declaring that the lands in controversy were not included in the Brazos county school grant, but were vacant lands between said school land on the south and surveys on the north of it. Defendants in error further contend that each and all of said surveys were located on the ground in such a way as to leave room for the junior surveys under which they claim.

The first assignment of error, which takes up over three pages of the printed transcript, and is further fortified by a bill of exceptions showing the ruling of the court, is to the effect that the court erred in sustaining the demurrer to the plaintiffs' plea of res adjudicata. In regard to this assignment, counsel for the plaintiff in error say that the general rule in regard to res adjudicata is that there should be a concurrence of four conditions: (1) Identity in the thing sued for; (2) identity in the cause of action; (3) identity of persons and parties to the action; and (4) identity in the quality of the persons for or against whom the claim is made,—citing Davis v. Brown, 94 U. S. 423, 24 L. Ed. 204; Philipowski v. Spencer, 63 Tex. 607, and other authorities. But they claim that there are exceptions to the general rule, and that such exceptions become the rule in questions of boundary and in all other questions in which the general public may have or acquire an interest, and that in actions of this character a judgment of a court of competent jurisdiction declaring or adjudicating the fact involved concludes all persons, whether parties to the action or not. The adjudged cases and text-books cited in support of this proposition do not sustain it. In Bone v. Walters, 14 Tex. 564,

567, the former judgment was offered as a muniment of title, and the court held that, as there was no pretense that the defendant was a bona fide purchaser, it was wholly immaterial whether or not he was a party, or had notice of the proceeding. In Girardin v. Dean, 49 Tex. 243, it was held that the fact that the parties in the first suit were not identically the same as those in the second was no answer to the plea of former judgment as to the common parties, but otherwise the case might be permitted to proceed if the dismissal of the parties still left the court with jurisdiction. In State v. Wygall, 51 Tex. 621, the court held that, where the estate of a deceased person in the treasury of the state had been sued for and recovered by one set of heirs, another set of heirs, although without notice of the judgment, could not sustain another suit to recover from the state until the former judgment had been set aside. McCleskey v. State (Tex. Civ. App.) 23 S. W. 518, was a suit to dissolve a municipality, and the court held that a judgment in a former suit for the same purpose was identical as to parties, and the former judgment was binding. In Pitman v. Town of Albany, 34 N. H. 577, a judgment under a statute which empowered the court to establish a public boundary line between two adjoining towns was held to be a judgment in rem, and conclusive upon all persons. In Freem. Judgm. §§ 157, 174–176, 236, nor in Bigelow, Estop. (2d Ed.) 147, is there any text-book law which supports the pretensions of the plaintiffs. The true rule, as applied to private judgments, seems to be correctly stated in Hunt v. Haven, 52 N. H. 162, to wit: One cannot be privy in estate to a judgment or decree unless he derives his title to the property in question subsequent to and from some party who is bound by such judgment or decree. That the former judgments pleaded in this case were judgments in rem or public judgments, or judgments binding the state, cannot be successfully asserted.

Another difficulty in regard to the proposition as applicable to the present case is that the record does not show whether the title under which the defendants in error claim antedated or was subsequent to the adjudications pleaded in bar. If their title was prior to such adjudications, it is very difficult to see how, in any event, they could be prejudiced by subsequent judgments rendered in suits to which they were not parties nor privies. If the title was subsequent to the adjudication, then there is no force in the argument of counsel for the plaintiffs in error, and which they support by authority, to wit:

"They, being in reality privies, were in a position to have known of the pendency of the action in which the decrees were rendered, could have made themselves parties, and could have had their rights adjudicated in either action. Having remained silent while those cases were being adjudicated, they cannot now be heard to dispute the facts they have established."

Some argument has been presented to the effect that, while no particular adjudication declaring these lands in controversy to be a part of the Brazos county school-land grant is res adjudicata against the defendants in error, yet the several decisions rendered in different suits to the same purport should have the effect of stare decisis. This argument, if otherwise good, is subject to the objection in this case that from the record the decisions are shown to have been not

all one way, as the defendants in error show adjudications which have in effect declared the lands in controversy not to be a part of the Brazos county school-land grant.

The second assignment of error complains of the ruling and the charge of the court, and the questions presented are shown in the bill of exceptions, to wit:

"Be it remembered that on the trial of the above styled and numbered cause the court gave the jury special charge No. 2, requested by defendants, which was as follows: 'If you believe from the evidence in this cause that the beginning corner of the Brazos county school land was located upon the ground, and that the lines and corners of said school-land grant were actually surveyed by the locating surveyor; and if you further believe from the evidence that the lines and boundaries of said school-land survey can be more certainly and definitely ascertained by beginning at said beginning corner, thence running north 2,396 vrs., thence west to the east line of the Griffin survey, thence south on the east line thereof to the N. W. corner of the Madison county school land, and so on east and south and north to the beginning, according to the calls in said grant,—then you are authorized to so locate said calls, if you believe from the evidence that all of the landmarks, courses, and distances called for in said grant will be thereby observed, and the configuration of the survey preserved, and the intent of the locating surveyor followed,'—to which special charge plaintiffs, by their counsel, except: Because said special charge was not authorized by the evidence, in this: That the testimony of W. C. Twitty, the original locating surveyor, shows that all of the lines and corners of said Brazos county grant were not located and run upon the ground (the testimony of W. C. Twitty being attached hereto, marked 'Exhibit A'); and because said special charge is misleading in this: The jury could and would infer and did conclude therefrom that they were thereby authorized to disregard the long call of the Brazos county grant on the west, and thereby cut off a strip on the north thereof. 717 vrs. wide north and south (the field notes of the Brazos county school land and contiguous surveys being hereto attached, marked as exhibits); and because said special charge authorized the jury to disregard the certain call for course and distance in the Brazos county grant calls, and makes such course and distance yield to an uncertain call for a point in the E. B. line of No. 113; and because said charge does not specifically and with certainty inform the jury that, before the calls in locating a grant can be reversed, it must be definitely shown by testimony that the entire grant and all lines and corners thereof were actually located and established upon the ground by the original locating surveyor. The charge in controversy in a measure limits such original location on the ground to the beginning corner, which objections were overruled by the court, to which ruling the plaintiffs then and there excepted, and now here in open court tender this, their bill of exceptions, and pray that the same may be signed, allowed, and ordered filed and made a part of the record in said cause."

The Exhibit A contains the testimony of W. C. Twitty as follows:

"W. C. Twitty testifies that he was 71 years old. In 1854, before and after, was surveyor and land locator. He had done some locating and surveying in Archer county from 1854 to 1860. He could not remember the exact date. Witness, with Howeth, located the Brazos county school land, 4-leagues grant, together with the other surveys. The Brazos county school land was located on the ground. It was not an office survey. The north call of the west line of the Brazos county where it calls, thence north 4,468 vrs., is a mistake. I intended in this call to run the full distance north. I did not intend to stop still before reaching the full course and distance as called for in this call. Where a hearing is called for and marked, they were always made. Some of the corners might have been derived from some other surveys I had made. Witness further testifies that he could not state whether he found the bearings at the beginning corner or not, but said that he must have located said school land from its beginning corner, as stated in the field notes. Witness was unable to say how the discrepancy in the field notes of the Brazos occurred. He

only intended to give the Brazos county grant its quantity of 4 leagues of land. and did not intend to give it any excess. Witness could not state who located the W. R. Griffin and Sarah Ursey, lying west of the Brazos school land. Does not remember whether he intended to abut the school land survey on them or not. Witness could not swear that he ran all the lines and established all the corners called for in the field notes of said survey on the ground; will not swear that he ever located its most northern west corner on the ground or not. He could not state whether he located that line or corner on the ground. Witness did not know whether or not he made the N. W. corner of the Brazos in the east line of No. 113. It is a fact that witness did not run the whole distance of the west line on the ground. It is a fact that he did not intend to locate the north line or the N. E. corner of said school land in conflict with No. 34. or 38, or any other survey. He did not intend to give the Brazos any excess. It is also a fact that he intended to run the north line due east from its N. W. corner, allowing only about 10 degrees variation."

The land claimed by the plaintiffs in error is shown and proved as follows:

"State of Texas, District of Cooke.

"Plat and field notes of a survey for Brazos county of four leagues of land for school purposes by virtue of an act appropriating certain lands for a general system of education. Approved Jan. 26th, 1839. Situated on the waters of Little Wichita. Beginning at the most eastern N. E. corner of No. 38, in the name of A. Sterne and Wm. Duckworth; thence W. 1,960 vrs. to another N. E. cor. of same sur.; thence S. 950 vrs. to another N. E. corner of said survey; thence S. 3,531 vrs. to the N. E. cor. of No. 60; thence W. 1,208 vrs. to the N. W. corner of No. 60 at 4,808, the N. W. corner of No. 61; thence S. 800 vrs. the N. E. cor. of No. 65; thence W. 1,980 vrs. the N. W. cor. of the same; thence N. 800 vrs. pass the S. E. cor. of No. 114, 4,112 vrs. the N. E. cor. of No. 114; thence W. 7,650 vrs. the N. W. cor. of No. 114; thence N. 4,186 vrs. a cor. in the east line of No. 113; thence E. 20,056 vrs. a cor. in the W. line of No. 34; thence S. 2,396 vrs. to beginning. Surveyed Oct. 4th, 1854.                                              James Mann,
                                                    "John A. Knight,
                                                              "Chainmen."

"I, William C. Twitty, dept. surveyor for the Cooke land district, do hereby certify that the foregoing survey was made according to law, and that its limits, boundaries, and corners, with the marks, natural and artificial, are truly described in the foregoing plat and field notes.
                              "William C. Twitty, Dept. Sur. C. L. D."

"I, Daniel Montague, district surveyor for Cooke land district, do hereby certify that I have examined the foregoing plat and field notes, and find them correct, and that they are recorded in my office in Book B, page 570. Given under my hand at Gainesville, this 20th day of Jan., 1855.
                              "Daniel Montague, Dist. Sur. C. L. D."

"I hereby certify that the above survey has this day been relocated in my office this 22nd day of Sept., 1856.        J. M. Perry, Dist. Sur. C. L. D."

"I, J. P. Hart, county surveyor of Archer county, Texas, do hereby certify that the pages contain a true and correct copy of the field notes and certificates for the Brazos county school land as by the records in my office in Book C, pages 171 and 172. Given under my hand this April 27th, 1890.
                              "J. P. Hart, Surveyor, Archer County, Texas."

It is conceded that all the surveys referred to in the plat and field notes of the Brazos county school land were about the same period—1854 to 1856—located, surveyed, and patented, and no question is made as to the correctness of any such surveys. It appears that the disturbing call in the survey of the Brazos county school-land grant is the call for distance in the west line of the same. A strict adherence to the calls for distance in the order as given in the survey locates the northwest corner of the grant a long distance north

of any corner in the east line of the survey No. 113, leaves the call for distance on the east line short 717 varas, and the survey unclosed, unless the east line is extended that distance, produces a conflict not intended with the prior survey No. 34, and gives the Brazos county school-land survey an excess of 3,400 acres of land. A reversal of the calls permits full effect to be given to each and all of them except the call for distance in the west line, and at the same time gives the Brazos county school-land grant a slight excess of land,—some four acres. It is the call for distance in the west line that Twitty now says is a mistake. At the same time he says, "I intended in this call to run the full distance north." It is proper to say that the evidence shows that, if the calls for course and distance are followed in the order given, but the surveys on the south referred to are disregarded, the grant will have an excess of 1,900 acres; and that, if the calls for course and distance are reversed, and the surveys on the south referred to are disregarded, the grant will be deficient some 1,200 acres. There appears to be no good reason why the surveys on the south referred to in the field notes should not be regarded, as it is not doubted that the said grant as located is bounded on the south by said surveys.

"When unmarked lines of adjacent surveys are called for, and when, from the other calls of such adjacent surveys, the position of such unmarked lines can be ascertained with accuracy, and when, in the absence of all evidence as to how the survey was actually made, there arises a controversy as to whether course and distance or the unmarked line of another survey shall prevail, we see no good reason why the survey line should not be given the dignity of an 'artificial object,' and prevail over course and distance." Maddox v. Fenner, 79 Tex. 279, 291, 15 S. W. 239.

In regard to excess of grant and a reversal of calls the same case holds:

"The calls of a survey may always be reversed, and, if this be done in this case, the last call in the Stevens patent, or the one 950 varas north from the William Ryan southwest corner, would be entitled to as much regard as the first or east call from that point. The effect of reversing the calls of the Stevens survey, and assuming the last one to be correct, upon the survey of plaintiffs, has not been discussed by counsel, and need not be by us. It is evident that the officer who made the Stevens survey did not discharge his duty accurately in every particular. His failure to do so is most strikingly shown by the quantity of the land included in the survey, if he actually ran the lines according to the surrounding surveys. Such excess, however, has never been held by this court a ground for disregarding surveys actually made. In this case the greatness of the excess is not without force as an argument indicating that the surveyor actually intended to make the Stevens embrace all of the land left by the surrounding surveys." 79 Tex. 292, 15 S. W. 239.

In Scott v. Pettigrew, 72 Tex. 321, 328, 12 S. W. 163, a charge limiting the effect of the excess in the survey of a land grant being under consideration, the court held:

"If the grant was for land located between older surveys having marked and identified boundaries, and these older surveys were called for in the field notes of the grant, and the 'footsteps' of the surveyor who located the grant could not be found upon the ground, then excess in area would be of no consequence, because the intent to grant the land between the marked boundaries of the older surveys would be clear. Bigham v. McDowell, 69 Tex. 100, 7 S. W. 315. But where no older surveys are called for in the grant, and there is nothing indicating an intent to embrace in the grant land not included in the area named,

and the footsteps of the surveyor who made the location are found upon a part only of the boundaries of the grant, we think the jury should not be instructed to fix the unmarked and undefined boundaries regardless of the fact of excess. The fact of excess in area should have been left to the jury to be considered in connection with all other evidence, without suggestion from the court as to what weight it was entitled to in determining so much of the boundaries as were not identified by marks and objects upon the ground."

The law presumes that all surveys are actually located and run upon the ground. Stafford v. King, 30 Tex. 257, 270; Phillips v. Ayres, 45 Tex. 601; Boon v. Hunter, 62 Tex. 582, 588; Gerald v. Freeman, 68 Tex. 201, 204, 4 S. W. 256; Maddox v. Fenner, supra.

In Phillips v. Ayres, supra,—a case much relied upon by the plaintiffs in error herein,—the court found from the evidence that it was quite probable neither the western nor northern limits of the survey involved were ever in fact run by the surveyor; and it is said, "If the grant were identified in no other way than by the beginning corner, a survey might be constructed from it by the calls for course and distance; but we are reduced to no such necessity;" and the court declared and applied this rule: "The order in which the surveyor gives the lines and corners in his certificate of survey is of no importance to find the true position of the survey. Reversing the courses is as lawful and persuasive as following the order of the certificate," —citing Thornberry v. Churchill, 4 T. B. Mon. 32, which case we have examined, and find that therein the rule as above given was declared, and no limitation to its application expressed. Referring to the last-cited case and Ayers v. Watson, 113 U. S. 594, 5 Sup. Ct. 641, 28 L. Ed. 1093, we find in Ayers v. Harris, 64 Tex. 309, a case involving the same Moreno grant, the following:

"The present case differs materially from the two cases just cited in this important particular: That the evidence of Johnson and Duty both shows that all the lines of the Moreno grant were actually traced and measured upon the ground, while in the case of Phillips v. Ayres there was no such proof, and the west and north lines were treated in the opinion of Judge Moore in that case as lost lines, or at least as lines that had not been found; and in the later case, decided in the supreme court of the United States, the evidence was that Johnson marked, without measuring the east line of the grant, from the northeast corner to the southeast corner on the river. If it is permissible to reverse the calls, and trace the lines a different way from that indicated in the field notes, in cases where the proof shows some of the lines were not actually run upon the ground, but their length was determined by estimation or calculation simply, it seems to us it is infinitely less hazardous to adopt such a rule in a case where all the lines are shown to have been actually measured by the surveyor who made the original survey. The object of all rules which have been formulated by the courts for locating, fixing, and determining boundaries has been to ascertain and discover, if possible, the footsteps of the surveyor, and in this way identify the survey that was actually made, and it is apparent that a charge which prescribes such a rule for the conduct of the jury can lead to no mischievous results. We conclude, therefore, that the charge complained of in the third assignment is not obnoxious to the objections urged by appellant."

In Ayers v. Lancaster, involving the same grant, and also reported in 64 Tex. 305, it was said the proof showed that the western and northern limits of the survey were in fact run and measured on the ground by the surveyor, and the reversal of the calls was held to be proper. But the court said, in addition:

"We are of opinion, however, that it would not be proper to reverse the calls, and to run in reverse from the southeast corner for the purpose of ascertaining where the northeast corner would be found, by the measurement called for in the grant, if in fact the east line was not actually measured at the time the survey was originally made, there being affirmative evidence showing that the western and northern lines were actually measured on the ground. Whether all or any of the lines were, in point of fact, measured on the ground should be submitted to and decided by the jury; and, if all were so actually measured, then the calls may be reversed; if not, they should not be." Page 312.

The dictum of the court in Ayers v. Lancaster, to the effect that a reversal of the calls in a survey can only be permitted when the lines are all actually run upon the ground, is in conflict with the case of Phillips v. Ayres, supra, which the court cited with approval, and was disregarded by the supreme court in Maddox v. Fenner, supra, and by the court of civil appeals of Texas in Hill v. Smith, 25 S. W. 1079. In the last-mentioned case the court says:

"We believe, in ascertaining the boundaries of surveys, where all of the calls made by the surveyor cannot be strictly observed, as few should be disregarded as can be consistently done, and that in this instance the proper way to locate the survey is to commence at the beginning corner, and run in both directions, following the calls in the patent as long as it can be done, and then close the gap in the manner which seems to be most consistent with all the calls. By doing this the only change that will be necessary will be to add about 150 varas to the line called to run south from the river 1,229 varas, and to change the call from this point on the river for Louisa peak from N., 18¼ W., to N., 10¼ W., which would have the effect to add about 2,300 varas to the river line. The amount of land that would thus be included in the survey, we understand, would about correspond with the amount called for in the patent. We think it quite probable that the surveyors who testified in the case were right in their conclusion that the only work done on the ground in making the original survey was the meandering of the river. But it is quite evident that the surveyor, in making his calculations to include the amount of land desired, estimated the distance it would be necessary for him to go west of the surveys on the south, and therefore called for their corners and lines; and the fact that he made a mistake as to the stopping point on the river should not have the effect to annul all these calls when the result will be to create such a decided shortage in the amount of land intended to be granted by the patent. Had the surveyor gone entirely around the survey, his footsteps should be followed, notwithstanding the deficiency in quantity; but when he stops on the line, and undertakes to give directions as to the route to be taken from that point to the place of starting, without himself visiting the designated places, these directions should be followed in such way as to best locate the grant according to the calls thus made. Robinson v. Doss, 53 Tex. 496."

Simpkins v. Wells, 26 S. W. 588, is a case where the supreme court of Kentucky approved the reversal of calls in order to harmonize a survey as far as possible, and apparently did not trouble themselves to inquire whether the survey was actually run.

In Ayers v. Lancaster, supra, where it is declared obiter that, while the calls for a survey may be reversed when the lines of the survey are actually upon the ground, and that it is not proper to reverse the calls of a survey where all the lines are not actually run upon the ground, no reason for such a rule is given or suggested, and we find neither in the arguments reported in that case nor in the briefs and arguments in the present case any suggestion or reason for such a rule. The only reason that occurs to us (there may be others) is that the last call of a survey is more elastic than the others, it being sub-

ject to variance both as to course and distance, in order to close the survey, and therefore it is less expressive of the surveyor's intention than any other call. Here it may be remarked that the intention of the surveyor, which is to be sought in settling a survey, is to be derived from the plat and field notes as made and from the facts and circumstances as they existed at the time of the survey. The subsequent declarations of the locating surveyor, particularly when made 40 years after, as to what he intended as to the running and extent of lines in the survey, are of little, if any, value. See Ayers v. Watson, 137 U. S. 584, 597, 11 Sup. Ct. 201, 34 L. Ed. 803. We take it, if the last call of the survey is more elastic than any other call, and yet where the survey is actually run on the ground, and the calls may be reversed so as to follow backward the footsteps of the surveyor, that in an office survey, where there are no footsteps of the surveyor, and the plat and field notes are the result of calculation and estimation by the surveyor, his intention being to have a survey which shall have a certain quantity of land within certain lines and boundaries, the last call of the survey is just as good, and as little subject to variation, as any other call. Of course, it is to be understood that, whether the survey be actually run on the ground or not, a reversal of the calls is not to be allowed in disregard of natural or artificial objects called for in the plat or field notes.

The testimony of Surveyor Twitty, supra, is conflicting and irreconcilable, and, while it may leave a strong impression that the lines of the Brazos county school-land survey were not actually run upon the ground, it is doubtful whether it was sufficient to overthrow the legal presumption shown by authorities hereinbefore cited that the lines of all surveys are actually run upon the ground; and certainly the question whether the lines of the Brazos county survey were actually run upon the ground was a question for the jury. See Ayers v. Watson, supra. If the jury found—as they had a right to do—that the presumption of law above mentioned was not overcome by the conflicting testimony of Twitty, and they further held that the lines of the survey were actually run upon the ground, then it is indisputable that the jury had a right to reverse the calls in order to harmonize the lines of the survey. On the other hand, if the jury found, on the evidence of Twitty, that the lines of the survey were not actually run upon the ground, yet, as we have shown that the rule declaring that the calls of an office survey may not be reversed is of doubtful authority, and, even if sound, ought not to be held a hard and fast rule subject to no exceptions; and as we have shown that, where surveys are not actually run upon the ground, the quantity of land intended to be called for in the survey is a material matter, to be considered in determining the survey; and as it appears that the real question at issue in the present case was whether the long call for distance in the west line of the Brazos county school-land survey should prevail over the short call for distance in the east line and several other calls of the same survey; and as it appears that by reversing the calls all the calls in the survey, with the exception of the call for distance in the west line, are harmonized, the conflict with prior surveys is avoided, and the Brazos

county school survey given its full quota of land,—we are of opinion that the learned judge of the trial court might very properly have instructed the jury in the language used by Judge McCormick in a noted and much litigated case, as follows:

"In order to reconcile or elucidate the calls of a survey in seeking to trace it on the ground the corner called for in the grant as the 'beginning' corner does not control more than any other corner actually well ascertained; nor are we constrained to follow the calls of the grant in the order said calls stand in the field notes there recorded, but are permitted to reverse the calls, and trace the lines the other way, and should do so whenever by so doing the land embraced would most nearly harmonize all the calls and the objects of the grant." Ayers v. Watson, 137 U. S. 598, 11 Sup. Ct. 206, 34 L. Ed. 809.

This was approved by the supreme court, and the opinion concludes as follows:

"If an insurmountable difficulty is met with in running the lines in one direction, and is entirely obviated by running them in the reverse direction, and all the known calls of the survey are harmonized by the latter course, it is only a dictate of common sense to follow it." Page 604, 137 U. S., page 208, 11 Sup. Ct., and page 811, 34 L. Ed.

In either view, a reversal of the calls was proper, and the charge complained of was more favorable to the plaintiffs in error than the case warranted, and any error of the court, if error therein, was not prejudicial to them.

The third assignment of error complains of the refusal of the trial judge to give the following special charges:

"You are further charged by the court that, when unmarked lines of adjacent surveys are called for by the field notes of contiguous surveys, and such unmarked lines can, from other calls, be ascertained and located with certainty, such unmarked lines, under such circumstances, are given the dignity of an artificial object. Therefore, if you find from the evidence in this case that the north line of the Brazos county school-land survey can be located with certainty, either from its own calls and corners or from the calls and corners of contiguous surveys, then such north line becomes an artificial object, which will control course and distance; and if you find, from the evidence, that such line can be so established, and that the surveys lying north of such line, to wit, the John Minter S. P. R. R. Co. survey, the H. H. Duff survey No. 8, H. & T. C. R. R. Co. surveys, Nos. 1, 2, and 3, call for the northern boundary line of said Brazos county school-land survey as a common divisional line, then no vacancy can occur between such survey and the Brazos county school land, and you will find for the plaintiffs." "The testimony in this case shows that there was no vacancy existing north of and adjoining the Brazos county school land at the time of the attempted appropriation of the land claimed by the defendants in this suit, because, without reference to the true location of the north line of the Brazos county school land, the surveys north, to wit, the John Minter S. P. R. R. Co. survey, H. H. Duff survey No. 8, H. & T. C. R. surveys 1, 2, and 3, all call for the north boundary line of the Brazos county school land, and exclude the existence of a vacancy, and therefore your verdict will be for the plaintiffs. Both of said charges being necessary from the field notes of the John Minter, H. H. Duff, and H. & T. C. R. Co. surveys, and the testimony of T. M. Cecil and J. P. Hart. Said field notes showing that these surveys were located from the north line of the Brazos county school land and each and all were tied to such north line as a common divisional line, and could not be separated to admit of a vacancy between them."

It appears from the testimony of Hart, surveyor, who located the Minter and a tier of surveys east of it, that he began the said Minter survey at a point 10,471 varas north of the common southwest corner of the H. S. Smith survey No. 68, and the southeast corner of

the Sarah Ursey survey as fixed by a large elm bearing tree, well marked, which corner and tree were found and identified, and then located said surveys by running out their boundaries on the ground and establishing the southwest and southeast corners of the said Minter survey by driving a stake in the ground at each corner, and at the same time located the other surveys east of said Minter survey covering the same ground now covered by surveys Nos. 1, 2, and 3 in the name of the H. & T. C. R. Co. If the Brazos county school-land survey was determinable by reversing its calls, and giving effect to the short call on the east line and the call for a corner in the east line of No. 113, there would be a strip of vacant land between said Brazos county school-land survey and the above-mentioned surveys actually located and surveyed on the ground. The first proposition contained in the above assignment was correctly refused, because it directed the jury to disregard the above testimony. See Gerald v. Freeman, supra; Adams v. Crenshaw, 74 Tex. 114, 11 S. W. 1082; Busk v. Manghum (Tex. Civ. App.) 37 S. W. 459; Colonization Co. v. Flippen (Tex. Civ. App.) 29 S. W. 813. The second proposition was also correctly refused, because it disregarded the testimony of J. P. Hart and T. M. Cecil, surveyors, and was otherwise against the evidence in the case.

The last assignment of error is that the court erred in overruling the plaintiffs' motion for a new trial, and needs no consideration.

As none of the errors assigned are well taken, and as we discover no plain error upon the face of the record, the judgment of the circuit court is affirmed.